In re Marvin C. COATS and Margaret R. Coats d/b/a Coats Auto and Truck Salvage; Coats Auto Service; and Coats Construction Company, Debtors.

Marvin C. COATS and Margaret R. Coats, Plaintiffs,

v.

Glenn E. VAWTER, Travis L. Bishop, Montgomery County, Texas, and Western Surety Company, Defendants.

Bankruptcy No. 91–46989–H1–13.
Adv. No. 91–4585.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Dec. 9, 1993.

---

## MEMORANDUM OPINION

MANUEL D. LEAL, Chief Judge.

On September 12, 1991 debtors and plaintiffs Marvin and Margaret Coats filed this adversary complaining that property of their bankruptcy estate had been wrongfully seized by defendants Montgomery County, Constable Travis Bishop, and Glenn Vawter.[1] The Coats also request damages resulting from defendants' exercise of exclusive dominion and control over property of the estate and their repeated refusal to release the property in willful violation of 11 U.S.C. Section 362. Debtors also assert a cause of action under 11 U.S.C. Section 525 alleging that defendant Travis Bishop discriminated against Mr. Coats' wrecker service by denying it towing engagements in retribution for the Coats' bankruptcy filing. According to Mr. and Mrs. Coats, the defendants' refusal to release seized property and the alleged interference with Coats' wrecker drivers violated 11 U.S.C. §§ 363(c)(1), 1304, and 1306 because debtors were prevented from using, selling, and remaining in possession of property of the estate. Based upon the evidence the Court rules that these provisions do not afford debtors a basis for recovery. Lastly, debtors contend that defendant Travis Bishop deprived debtors of their civil rights un-

---

**1.** Defendant Glenn Vawter was dismissed at plaintiffs' request pursuant to order of Court entered on November 4, 1992. Thus, only defendants Travis Bishop, a Montgomery County constable, and Montgomery County, Texas remain.

der color of state law pursuant to 42 U.S.C. Section 1983. Debtors allege that Bishop acted within the scope of his official duties such that Montgomery County is liable for his actions under 42 U.S.C. § 1983 as well.

A trial of this adversary was held on November 17 and 18, 1992. At the conclusion of the Coats' case in chief, defendant Montgomery County, Texas moved for a directed verdict on the theory that the immunity granted to states in the Eleventh Amendment of the United States Constitution applies to Texas counties, making the county immune from liability for any damages resulting from prosecution of the instant adversary. Based on the oral arguments of counsel, this Court granted the County's motion but ordered the trial to proceed as to all other issues. The Court took under advisement the issue of whether Constable Bishop enjoys immunity for his actions.

The Coats asked this Court to reconsider its order granting a directed verdict in favor of Montgomery County. The Motion for Reconsideration was granted, and the issue of Montgomery County's immunity was taken under advisement. This Court now vacates the directed verdict because this Court concludes that under existing law the county does not enjoy immunity pursuant to the Eleventh Amendment to the United States Constitution.

Accordingly, the following findings of fact and conclusions of law pertain to the liability, if any, of both Constable Travis Bishop and Montgomery County, Texas.

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this district. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Coats operates 3 businesses, each of which is or was a sole proprietorship: An auto and truck salvage business under the name of "Coats Auto and Truck Salvage"; a wrecker service under the name of "Coats Auto and Truck Salvage"; and an automotive repair service business under the name of "Coats Auto Service". All of these businesses were located at 23 Velma Lane, which is within the geographic jurisdiction of Precinct Four of Montgomery County, Texas. Coats had operated these businesses for approximately 18–19 years at this location when the following events took place.

Glenn E. Vawter, a private citizen, obtained a state court $9,239.50 civil judgment against Marvin Coats in Montgomery County, Texas. Vawter then abstracted his judgment and pursued his state law collection remedies against Coats through a Writ of Execution which authorizes a Montgomery County Constable to levy on the defendant's property to satisfy the judgment.

Prior to debtor's bankruptcy, Deputy Constable Lieutenant Charles Fuller and Deputy Constable Dodson arrived at 23 Velma Lane to execute the writ and seized Coats' property to satisfy the Vawter judgment. In Mr. Coats' business office, Lieutenant Fuller advised Mr. Coats of the seizure and told him to gather his personal belongings and prepare to leave the premises. Mr. Coats and Lieutenant Fuller had just left the office when Constable Travis L. Bishop arrived at the scene. All of these officials were in the uniforms of Montgomery County Constables from Precinct Four. All arrived in officially marked vehicles, and all were wearing guns. This Court is satisfied that the seizure was a lawful one.

Although Lieutenant Fuller allowed Coats to remove a few items from the business office the vast majority of the office property was seized by the constables. Lieutenant Fuller placed a seizure tag on the doors to Coats' business, as well as on the Coats' motorhome. The constables rolled up a cable across Velma Lane, the only road which provided automobile access to the Coats' business. Lieutenant Fuller told Coats that nothing was to go in or out, referring to the property beyond the cable. Lieutenant Fuller further instructed Coats that everything beyond the cable was seized and that Coats was not to break any of the seizure tags. A violation of these instructions, Lieutenant Fuller warned, would be a felony offense. This Court is satisfied that the seizure of the

debtors' property on August 28, 1991 was within the scope of the official duties of these Montgomery County Constables.

The seizure of the Coats' property caused their salvage business to almost completely shut down as Mr. Coats had no access to his salvage yard or parts. The seizure similarly shut down the Coats' automotive repair business since Mr. Coats lacked access to the tools and/or equipment which were necessary for automotive repairs. Because one of Coats' wreckers had been off the premises during the seizure, Mr. Coats was able to continue in a very limited capacity in his wrecker business. However, Mr. Coats could only tow those vehicles which didn't require storage in a secured lot because the Coats' lot had been cordoned off and seized by the constables.

On August 30, 1991 Marvin C. Coats and his wife, Margaret R. Coats, d/b/a Coats Auto and Truck Salvage; Coats Auto Service; and Coats Construction Company filed a Chapter 13 petition in bankruptcy. The bankruptcy was filed because the seizure had such a disastrous impact on the Coats' business and they needed to reorganize their business in order to pay bills.

On August 30, 1991, the Coats' bankruptcy attorney, Mr. Hugh Butler, notified Lieutenant Fuller both by telephone and by fax that Mr. and Mrs. Coats had filed bankruptcy. Butler faxed a memo to Fuller requesting that the seized property be released and advised that all collection and enforcement actions were stayed pursuant to § 362 of the Bankruptcy Code. However, Lieutenant Fuller would not release the property. A second fax from Butler to Lieutenant Fuller, also transmitted on August 30, 1991, set forth the applicable portion of 11 U.S.C. § 362. Also on August 30, 1991, Butler advised Mr. Frank Bass, Assistant County Attorney for Montgomery County, that the debtors had filed bankruptcy and requested that the seized property be returned. Later that same afternoon Lieutenant Fuller advised his employer Constable Bishop of the Coats bankruptcy.

Upon the suggestion of Captain Lacey, Lieutenant Fuller's civil process instructor, Lieutenant Fuller contacted Frank Bass, Assistant County Attorney for Montgomery County, Texas, on the afternoon of August 30, 1991. Mr. Bass did not advise Lieutenant Fuller to release the seized property at the time. Rather, Mr. Bass expressly instructed Lieutenant Fuller not to do anything. Mr. Bass asked Lieutenant Fuller to send him a copy of the fax transmission which the Coats' attorney had sent to Fuller. Mr. Bass apparently wanted to review the Bankruptcy Code before advising the constables how to proceed. Pursuant to Mr. Bass' instructions, Lieutenant Fuller brought copies of everything he had received from debtor's attorney, as well as a copy of the Writ of Execution, to Mr. Bass' office on September 2, 1991. Mr. Bass did not give Lieutenant Fuller any advice regarding the Coats matter at that time. However, Fuller still would not release the property and continued exercising exclusive control over it.

Thirteen days later, on September 12, 1991 the debtors filed this adversary proceeding for failure to release the estate property. Glenn E. Vawter, the judgment creditor was originally named as a defendant but was later dismissed pursuant to a settlement. Constable Bishop received this complaint but refused to release the seized property. Constable Bishop similarly refused to release the seized property upon receipt of debtors' Emergency Motion for Turnover, which was filed on September 24, 1991 and set for hearing on October 8, 1991. Constable Bishop testified that he did not release the property upon receiving these pleadings because he had not yet heard from the bankruptcy trustee. At that hearing the parties announced that the Constable had agreed to release the seized property. An Agreed Order embodying this agreement was signed by the Court on October 16, 1991.

The Coats' property was not released until October 10, 1991. On that date Assistant Montgomery County Attorney Hal Agron telephoned Lieutenant Fuller and told him to release the property. Lieutenant Fuller immediately drove to 23 Velma Lane, the site of the Coats' businesses, and removed all locks and seizure tags from the property. At this time Lieutenant Fuller was wearing his Montgomery County Constable's uniform

and a gun, and he was driving a marked vehicle with the Montgomery County Constable's insignia on it. This Court is satisfied that the release of the seized property by Lieutenant Fuller was within his official duties as a Montgomery County Constable.

Debtors' property was in the possession of the Montgomery County Constables for 41 days after the Constable's Office learned of the Coats bankruptcy on August 30, 1991. During the seizure period, from August 28, 1991 through October 10, 1991, the Coats' businesses suffered significant losses as customers were informed that the Coats' business had been closed down.

The Coats claim the defendants have violated 11 U.S.C. § 362(a)(1)–(5). Specifically, the Coats argue that the continued retention of their property by Montgomery County and Constable Travis Bishop, despite their knowledge of debtors' bankruptcy, violated the automatic stay. According to the Coats, defendants had an affirmative duty to release the Coats' property, all of which was seized prepetition. The Coats also claim that defendant Bishop denied Mr. Coats' wrecker service towing jobs simply because he filed bankruptcy, a violation of 11 U.S.C. § 525. Finally, the Coats request relief due to defendants' alleged violation of their civil rights under 42 U.S.C. § 1983. The Coats request an award of both compensatory and punitive damages, as well as reimbursement for costs and attorneys' fees. The Court will address these charges in turn.

### CONCLUSIONS OF LAW

*Montgomery County and Eleventh Amendment Immunity*

■ Before turning to the merits of debtors' allegations, a discussion of Montgomery County's immunity to these causes of action is in order. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has repeatedly held that the Eleventh Amendment does not apply to counties. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 123, n. 34, 104 S.Ct. 900, 920, n. 34, 79 L.Ed.2d 67, 93, n. 34 (1984) (quoting *Mt. Healthy City School Dist. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471, 479 (1977)).

In addition, there is specific authority holding the Eleventh Amendment inapplicable to Texas counties. In *Crane v. State of Tex.,* 759 F.2d 412, 417 (5th Cir.), amended in part, 766 F.2d 193 (5th Cir.), cert. denied, 474 U.S. 1020, 106 S.Ct. 570, 88 L.Ed.2d 555 (1985) the Fifth Circuit held that the Eleventh Amendment does not, as a general rule, extend to counties. Similarly, county officials such as Constable Bishop are not protected by the immunity provided in the Eleventh Amendment. *Crane,* at 432. The *Crane* Court concluded that there was no exception to the general rule absent convincing evidence distinguishing the county in question from counties generally. *Crane,* at 417. The most crucial factor to be considered in determining Montgomery County's status is whether funds to defray any award against the county would be derived from the state treasury, the rationale being that the lawsuit could in fact be a lawsuit against the state itself. *Laje v. R.E. Thomason General Hospital,* 665 F.2d 724, 727 (5th Cir.1982). (citations omitted). *See also, Wheeler v. Mental Health & Mental Retardation Auth.,* 752 F.2d 1063 (5th Cir.), cert. denied, 474 U.S. 824, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985). There is insufficient evidence on the record establishing that any award of damages against Montgomery County in this case would be paid from the state treasury. Montgomery County has similarly failed to adduce any evidence which would support a deviation from the general rule articulated by the Fifth Circuit that Texas counties are independent units of local government to which the Eleventh Amendment does not apply. Thus, this Court rules that Montgomery County does not enjoy immunity under the Eleventh Amendment.

■ Alternatively, counsel for Montgomery County claims the county is immune from an award against it of monetary damages, citing 11 U.S.C. § 106(c) in support. That section which addresses the waiver by a

governmental unit of sovereign immunity, provides:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor", "entity", or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

Montgomery County claims that although 11 U.S.C. § 106(c) waives sovereign immunity for purposes of injunctive and declaratory relief, it does not do so for suits seeking monetary damages. *Hoffman v. Connecticut Dep't of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989). Montgomery County also claims that as a governmental unit, it is immune from monetary damages actions arising from violations of the automatic stay based upon *In re Pearson*, 917 F.2d 1215 (9th Cir.1990), cert. denied, —— U.S. ——, 112 S.Ct. 1291, 117 L.Ed.2d 514 (1992).

This Court concludes that Montgomery County is a governmental unit under the Bankruptcy Code. 11 U.S.C. § 101(27) defines governmental unit as including a "municipality". 11 U.S.C. § 101(40) defines municipality as a "political subdivision or public agency or instrumentality of a State". Montgomery County, a political subdivision of the State of Texas, is a governmental unit within the purview of these provisions. *See, In re United Const. and Development Co.,* 135 B.R. 904, 907 (Bankr.D.Utah 1992), affirmed, 140 B.R. 573 (1992).

However, 11 U.S.C. § 106(c) only pertains to government units which have sovereign immunity to begin with. Section 106 does not confer sovereign immunity on any governmental unit that does not already have it. It merely recognizes any immunity that exists and prescribes the proper treatment of claims by and against that sovereign. H.R.Rep. No. 595, 95th Cong., 1st Sess. 317 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 29–30 (1978) 1978 U.S.Code Cong. & Admin.News 5787. Therefore, § 106(c) does not apply to Montgomery County because, as already established, it does not enjoy sovereign immunity in the first place. Thus, those cases cited by Montgomery County's counsel for the premise that § 106(c) does not operate to waive the county's sovereign immunity as to money damages are inapposite.

*11 U.S.C. § 362*

11 U.S.C. § 362 provides in pertinent part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 USC 78eee(a)(3)), operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title.

The burden of proving a violation of the automatic stay is upon the party alleging the violation. *In re Bennett,* 135 B.R. 72, 76 (Bankr.S.D.Ohio 1992).

■ The Coats have sustained their burden of proving that Constable Bishop and Lieutenant Fuller violated the automatic stay by refusing to release the Coats' property upon learning of their bankruptcy filing. 11 U.S.C. § 541(a)(1), which sets forth what constitutes "property of the estate", defines the "estate" as "comprised of all the following property, wherever located: ... all legal or equitable interests of the debtor in property as of the commencement of the case." The legislative history indicates the scope of § 541(a)(1) is broad. H.R.Rep. No. 95–595, p. 367 (1977); S.Rep. No. 95–989, p. 82 (1978). In *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), the Supreme Court held that the reorganization estate includes property of the debtor that has been seized by a creditor pre-petition. 462 U.S. at 209, 103 S.Ct. at 2315.

The continued retention of debtors' collateral repossessed prepetition, by an entity with knowledge of the bankruptcy, is itself a violation of the automatic stay. The case of *In re Knaus,* 889 F.2d 773 (8th Cir.1989) is instructive. In *Knaus,* which involved facts similar to those in the case at bar, a sheriff seized grain and equipment belonging to Knaus pursuant to a Writ of Execution and prior to the filing of the bankruptcy petition. After Knaus filed a bankruptcy petition under chapter 11, his attorney demanded that the creditor return the seized property. The creditor refused. Knaus then filed suit for turnover of the property pursuant to 11 U.S.C. § 542, and the court found that the creditor had also violated § 362(a)(3) because it did not voluntarily return the property after the bankruptcy petition was filed.

The *Knaus* court noted there was no reason to distinguish between a failure to return property taken before the stay and a failure to return property taken after the stay. "In both cases the law clearly requires turnover". *Knaus,* at 775. In support, the *Knaus* court referred to *United States v. Whiting Pools, Inc., supra,* for the premise that property

seized but not yet sold before the filing of the bankruptcy petition is property of the estate subject to the turnover requirements of 11 U.S.C. § 542. *Knaus,* at 775. Additionally, the *Knaus* court found that the failure to fulfill the duty to turn over property of the estate upon filing of the bankruptcy petition, regardless of whether the original seizure is lawful, constitutes a prohibited attempt to exercise control over property of the estate in violation of the automatic stay. *Id. See also, In re Abrams,* 127 B.R. 239, 241 (9th Cir. BAP 1991); *In re Ryan,* 156 B.R. 321, 322 (Bankr.M.D.Fla.1993).

On August 28, 1991 Constable Bishop and his deputies lawfully seized debtors' property pursuant to a writ of execution. Constable Bishop learned of the Coats' bankruptcy on the day it was filed, August 30, 1991, when debtor's attorney sent faxes to Lieutenant Fuller in the constable's office and the latter informed Constable Bishop of the filing. Constable Bishop failed to remove the seizure tags and barrier tape from the Coats' property, and this failure to return the property violated § 362. Upon filing of the bankruptcy petition, all of the Coats' property came into the bankruptcy estate and under the exclusive jurisdiction of federal courts pursuant to 11 U.S.C. § 541. Under federal statute Constable Bishop had no legal right to continue exercising exclusive dominion and control over the estate property once he learned of the Coats' bankruptcy.

■ Constable Bishop's actions clearly made him liable under § 362. The fact that Constable Bishop may never have personally seen the faxes debtor's counsel sent to his office and to his Lieutenant Fuller advising the latter of the Coats' bankruptcy filing is insufficient to remove him from liability under § 362. On August 30, 1991, the same day that the Coats' attorney notified Lieutenant Fuller of the Coats' bankruptcy filing, Lieutenant Fuller informed Constable Bishop of the filing. Also, debtors' attorney sent a letter to Constable Bishop on September 4, 1991, which contained the notice of the bankruptcy filing, indicated the nature of the assets seized, and advised that continued seizure was in violation of the Bankruptcy Code. In the letter debtors' attorney also requested

that the seized property be released.[2] "Knowledge of the bankruptcy filing has been held to be the legal equivalent of knowledge of the automatic stay." *In re Lile,* 103 B.R. 830, 837 (Bankr.S.D.Tex.1989) (citing *Wagner v. Ivory (In re Wagner),* 74 B.R. 898, 904 (Bankr.E.D.Pa.1987)). Once a party learns of the bankruptcy filing, he or she is under a duty to seek further information which should reveal the applicability and scope of the automatic stay. *Id.* Constable Bishop had knowledge of the Coats' pending bankruptcy, but intentionally chose to disregard the automatic stay by continuing with the seizure.

■ For the reasons outlined in the discussion of Constable Bishop's liability, this Court also rules that the Montgomery County Attorney's Office and Montgomery County violated the automatic stay by continuing to hold the Coats' property. This Court concludes that Montgomery County is liable for violating the automatic stay due to the role played by attorneys in the Montgomery County Attorney's Office in giving instructions to the constables. When Lieutenant Fuller contacted Assistant Montgomery County Attorney Frank Bass on August 30, 1991 regarding the Coat's bankruptcy filing, the latter expressly instructed Lieutenant Fuller not to do anything. Further, the County Attorney failed to address the Coats matter even after Lieutenant Fuller brought all the communications the Constable's office had received from debtors' attorney to Mr. Bass' office. This was on September 2, 1991. It was not until October 10, 1991 that the Coats' property was released at the instruction of Assistant Montgomery County Attorney Hal Agron. The Montgomery County Attorney's Office has not adequately explained why it did not direct the release of the subject property for 41 days after learning of the Coat's bankruptcy. Even allowing for time to review the relevant Bankruptcy Code provision, the delay seems to this Court to be unnecessarily and unreasonably lengthy.

Arguably, the Montgomery County Attorney's office is the ultimate repository of county power in the area of determining legal actions to be taken on the county's behalf. When Assistant County Attorney Frank Bass advised Lieutenant Fuller not to do anything with the property, he was acting in his area of responsibility on behalf of the county. This Court is under the impression that he and other county attorneys possess expertise regarding the legal ramifications of actions taken by county agents. It is doubtful whether any other official might fairly be held responsible for advising a constable as to the legal effect of the automatic stay in a bankruptcy case on property already seized by the constable pursuant to a valid writ of execution. Assistant County Attorney Frank Bass was notified by both debtors' attorney and Lieutenant Fuller of the Coats' bankruptcy and the potential automatic stay violation, but he ignored the case until it was resolved by agreement. Liability should be imputed to the county for the actions and inaction of the Montgomery County Attorney and his staff. Factually, the county in this case knowingly violated the automatic stay.

*11 U.S.C. § 525*

Mr. and Mrs. Coats assert 11 U.S.C. § 525(a) confers rights upon them. 11 U.S.C. § 525(a) provides in relevant part: "... a governmental unit may not ... deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title ... solely because such bankrupt or debtor is or has been a debtor under this title...." Debtors argue that defendant Travis Bishop or his deputies acted to deprive plaintiff of towing engagements on May 2, 1992 and May 10, 1992 in retaliation for debtors' filing bankruptcy. Based on the credibility of the testimony elicited at trial, this Court concludes that debtors' allegations under 11 U.S.C. § 525 lack merit. There is insufficient credible evidence to find that Montgomery County Constables denied Coats wreckers towing engagements because of Mr. and Mrs. Coats' bankruptcy filing. On the contrary, Consta-

---

**2.** Constable Bishop claims that Lieutenant Fuller told him that this letter had come in, but it was filed without Constable Bishop ever reading it.

ble Bishop and Lieutenant Fuller both testified that Coats wreckers were being permitted to make tows after the Coats' bankruptcy filing.[3]

*42 U.S.C. 1983*

■ 42 U.S.C. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Debtors' § 1983 civil rights claim appears to be derivative. That is, debtors apparently base their 42 U.S.C. § 1983 claim on alleged violations of 11 U.S.C. § 362 and § 525. The Supreme Court has held that the laws referred to in § 1983 are not limited to civil rights or equal protection laws but rather include violations of any federal statute. *Maine v. Thiboutot,* 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). Presumably, this would encompass a violation of a provision of the Bankruptcy Code. This interpretation has, however, been questioned in later decisions, and the *Thiboutot* rule has been limited. *See Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 19, 101 S.Ct. 2615, 2625–26, 69 L.Ed.2d 435 (1981); *Pennhurst State School and Hosp. v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981). These decisions stand for the premise that in cases involving the enforcement of federal statutory rights, access to a § 1983 remedy should be denied if (1) the language of the statute indicates a congressional intent to preclude section 1983 enforcement by making alternative remedies available, or (2) the statute does not create rights enforceable by private parties under section 1983. *Pennhurst,* 451 U.S. at 20–22, 101 S.Ct. at 1541–

43. A review of 11 U.S.C. §§ 362 and 525 reveals Congress' intent to establish a comprehensive enforcement mechanism for violations of the automatic stay and governmental discrimination against debtors, respectively. Therefore, on the surface it appears that Congress has enacted alternative remedies and it does not appear that additional derivative causes of action exist in this case by virtue of § 1983. *In re Saunders,* 105 B.R. 781, 784 (Bankr.E.D.Pa.1989). *See also, Periera v. Chapman,* 92 B.R. 903, 906–08 (C.D.Cal.1988).

*Immunity for Constable Bishop*

■ The county attorney representing Constable Travis Bishop urges that Constable Bishop is being sued only in his official capacity and therefore that the defense of qualified immunity applies. Assuming that the constable is correct that he is being sued only in his official capacity, a position not challenged by debtor, qualified immunity would not apply because it insulates defendants only from liability in their individual capacities. *Familias Unidas v. Briscoe,* 619 F.2d 391, 403 (5th Cir.1980).

The Court has considered the cases advanced by Constable Bishop's for the principle that qualified immunity applies in this case to shield him from liability for damages. Those are civil rights cases addressing qualified immunity for officials sued pursuant to 42 U.S.C. § 1983. *See e.g., Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Gagne v. City of Galveston,* 805 F.2d 558 (5th Cir.1986), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987) (police officer entitled to defense of qualified immunity in § 1983 action); *Rhode v. Denson,* 776 F.2d 107 (5th Cir.1985) (elected constable of Texas County did not occupy a policymaking position so as to expose county to civil rights liability for his unconstitutional acts). *Merritt v. Harris County,* 775 S.W.2d 17 (Tex. App.—Houston [14th Dist.] 1989) (constables are not policymaking officials of county gov-

---

**3.** Counsel for debtors argued at trial that defendants' alleged interference with debtors' towing business violated § 362(a)(3) because it involved an exercise of dominion over property. For the

reason stated in the foregoing discussion of debtors' § 525 claim, the Court rules that defendants did not violate the automatic stay as debtors contend.

ernment for purposes of determining whether county can be liable under 42 U.S.C. § 1983 for any constitutional tort committed by constables); *See also, Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (immunity of FBI agent in § 1983 action); *West v. Atkins*, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (immunity in § 1983 action for physician under contract with state to provide medical services to inmates at state prison hospital); *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980) (immunity in § 1983 action for city, city manager, and members of city council).

This Court agrees that Constable Bishop would have qualified immunity in a 42 U.S.C. § 1983 action. However, Constable Bishop has presented no statutory or case authority extending the doctrine of qualified immunity to a local police official who knowingly violates 11 U.S.C. § 362. This Court has not found anything reflecting that Congress intended to shield constables from liability for violations of § 362 and must decline to create new law.

*Damages*

▇▇▇ 11 U.S.C. § 362(h) provides, "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, inappropriate circumstances, may recover punitive damages." When a party acts with knowledge of a pending bankruptcy, a violation of the stay is considered willful. *In re Lile*, 103 B.R. 830, 836–37 (Bankr.S.D.Tex.1989) (citing *In re Meinke, Peterson & Damer, P.C.*, 44 B.R. 105, 108 (Bankr.N.D.Tex.1984)). Also, a creditor's "good faith" belief that he is not violating the automatic stay provision is not determinative of willfulness under § 362(h). *In re University Medical Center*, 973 F.2d 1065, 1088 (3rd Cir.1992) (quoting *In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989) [quoting *INSLAW, Inc. v. United States*, 83 B.R. 89, 165 (Bankr.D.D.C. 1988)]).

In this case debtors' counsel immediately notified Constable Bishop's office of the Coats' bankruptcy filing and requested turnover of the seized property. The Constable, his deputy and the Assistant County Attor-

ney all knew as of August 30, 1991 that the Coats had filed for bankruptcy protection. They had copies of the pleading and in no uncertain terms were pointed to the appropriate federal statutes. Yet, they refused to cease exercising exclusive dominion, possession and control of estate property for an additional 41 days. By intentionally refusing to release the subject property Constable Bishop and Montgomery County knowingly violated the automatic stay. This is not a case where law enforcement officials and the Assistant County Attorney simply did not know the law or were forced to take necessary action in violation of bankruptcy law for the safety and protection of the public. The damages actually suffered by debtors directly flow from defendants' willful refusal to return the seized property for 41 days.

According to the evidence and testimony, the Coats' business was shut down for 41 days because of the actions taken by defendants to cordon off the premises and seize business property. The evidence shows that based on Coats' historical business records, the anticipated income from the Coats' businesses for those 41 days was $2,959.79. The Coats' actual income was $521.88. The difference, $2,437.91, constitutes the actual damages suffered by the Coats as a result of defendants' violation of the automatic stay. 11 U.S.C. § 362(h) also authorizes an award of attorneys' fees to debtors. Hugh Butler, the Coats' counsel, submitted a fee affidavit in the amount of $39,003.00 which was admitted into evidence. The Court has carefully considered the affidavit and disallows $4,940.00 for 49.4 hours of work not attributable to the Coats' lawsuit against Travis Bishop and Montgomery County. The total amount awarded for attorneys' fees is $34,099.00. Defendant Constable Travis Bishop and Montgomery County are jointly and severally liable for these damages in the total amount of $36,536.91 plus postjudgment interest pursuant to 28 U.S.C. § 1961 at 3.57% until the judgment is paid.

## JUDGMENT

Came on for consideration the adversary complaint of debtors Marvin C. Coats and Margaret R. Coats filed on September 12,

1991 and all amended complaints. After careful consideration the Court renders judgment in favor of debtors and against Constable Travis L. Bishop and Montgomery County.

Debtors Marvin C. Coats and Margaret R. Coats are therefore awarded $2,437.91 in actual damages suffered by them as a result of Constable Bishop's and Montgomery County's violation of the automatic stay pursuant to 11 U.S.C. § 362. The Court also awards the Coats $34,099.00 for payment of attorneys' fees. Constable Travis L. Bishop and Montgomery County are jointly and severally liable for these damages in the total amount of $36,536.91 plus postjudgment interest pursuant to 28 U.S.C. § 1961 at 3.57% until the judgment is paid.