In re Josephine and Daniel BEGLEY,
Chapter 7 Debtors.

Josephine & Daniel BEGLEY, et al.

v.

PHILADELPHIA ELECTRIC COMPA-
NY, Pennsylvania Public Utility
Commission, et al.

Bankruptcy No. 82–02461K.
Adv. No. 82–3102K.
Civ. A. No. 83–4657.

United States District Court,
E.D. Pennsylvania.

June 11, 1984.

Michael Donahue, Margaret Lenzi, Del. County Legal Assistance Ass'n, Chester, Pa., for plaintiffs.

Alphonso Arnold, Jr., Harrisburg, Pa., for defendant Pa. PUC.

Kevin W. Gibson, Pechner, Dorfman, Wolffe, Rounick & Cabot, Philadelphia, Pa., for defendant PECO.

MEMORANDUM

LOUIS H. POLLAK, District Judge.

The Pennsylvania Public Utility Commission ("PUC") has promulgated regulations which impose certain procedures upon utilities that seek to terminate service to a delinquent residential customer. 52 Pa.Admin.Code chap. 56 (Shepard's 1983). These regulations require, among other things, that the utility give notice to the customer, personally contact the customer, and engage in negotiations under the PUC's auspices to establish an amortized payment plan. An amortized payment plan provides that the customer will pay future bills when due and gradually satisfy his arrearage. Since 1981, the PUC has taken the position that section 366 of the Bankruptcy Code, 11 U.S.C. § 366, preempts PUC jurisdiction to require utilities to negotiate amortized payment agreements when the utility's customer has filed a petition in bankruptcy. *Anyanwu v. Philadelphia Electric Co.*, 55 Pa.P.U.C. 221 (1981). The principal question posed by this case is whether the PUC is correct in reading Section 366 to preclude the PUC from exercising its protective authority to maintain residential service for a utility customer whose affairs are in the hands of the bankruptcy court. The question arises in the following way.

Plaintiffs filed a voluntary petition in bankruptcy under chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 701–766. At the time of their filing, plaintiffs had a substantial unpaid overdue arrearage in their electric bill. Pursuant to 11 U.S.C. § 366(b), as described more fully below, the Begleys posted a security deposit with PECO adequately to assure payment for post-petition service. After their petition in bankruptcy, the Begleys again fell behind in their payments to PECO. PECO gave the Begleys notice that it intended to terminate their service.

■ Upon receipt of PECO's notice, the Begleys filed an informal complaint with the PUC, invoking the PUC's amortized payment negotiation procedures. *See* 52

Pa.Admin.Code § 62.163(a). The PUC declined to exercise jurisdiction. While the PUC will require a utility to provide notice and personal contact before terminating service to a bankruptcy debtor on the basis of a post-petition delinquency, the PUC will not exercise jurisdiction to require negotiation of an amortized payment agreement. *Anyanwu*, 55 Pa.P.U.C. at 222.

The Begleys then commenced this adversary action in bankruptcy court against the PUC and PECO seeking a federal court's determination that section 366 does not preempt the PUC's regulations. Plaintiffs later amended their complaint to convert this into a class action.[1] The Begleys moved preliminarily to enjoin PECO from terminating their electricity service. At the hearing on the motion for preliminary injunction the defendants consented to entry of an Order restraining PECO from terminating the Begleys' service. This Order remained in effect while the parties briefed motions for summary judgment before Bankruptcy Judge King.

On April 13, 1983, Judge King *sua sponte* raised a question concerning his jurisdiction over this matter under this court's emergency rule referring bankruptcy matters to the bankruptcy court. Judge King transferred the case to the district court. The Begleys appealed Judge King's Order transferring the case. Upon consideration of the appeal, I held that the bankruptcy court did, in fact, have jurisdiction over this case, and I remanded the case to Judge King. *Begley v. Philadelphia Electric Co.*, 30 B.R. 469 (E.D.Pa.1983).[2]

Shortly after the remand of this case to the bankruptcy court, PECO moved to lift the consensual temporary restraining order on the ground that the Begleys had continued to incur substantial arrearages. Judge King granted PECO's motion for relief from the restraining order on August 10, 1983. The Begleys appealed. In my absence, Judge O'Neill, the emergency judge, granted a stay from November 1, 1983 until November 7, 1983, of the termination of the Begleys' electricity service pending their appeal. On my return, the parties agreed to entry of another restraining order under which the Begleys' service was to be maintained on condition that the Begleys pay their bills as they became due. The Begleys have fulfilled this condition and have, in addition, made certain payments against their accumulated post-petition arrearage.

Upon oral argument of the Begleys' appeal, all parties made clear that they did not merely wish this court to decide the propriety of Judge King's lifting of the initial restraining order. All parties moved this court in addition to withdraw the reference of this adversary action from the bankruptcy court. Accordingly, on April 11, 1984, I withdrew the bankruptcy court reference and established a schedule for rebriefing of the pending motions for summary judgment.

Plaintiffs raise four claims in this case. *First*, the Begleys claim that section 366 does not preempt the PUC's regulations as applied to them and that they are therefore entitled to declaratory relief to that effect against PECO and the PUC. Plaintiffs also seek mandatory relief requiring PECO to negotiate an amortized repayment agreement in lieu of termination of service and requiring the PUC to exercise jurisdiction over that negotiation. *Second*, the Begleys claim that, by refusing to exercise jurisdiction in their case, the PUC has vio-

---

**1.** No class has yet been certified. Plaintiffs have moved for class certification in the bankruptcy court. I have deferred consideration of a renewed motion for class certification until after disposition of the parties' cross-motions for summary judgment. Given the disposition of those motions, it is not clear to the court that plaintiffs will wish to press their motion for class certification.

**2.** Plaintiffs seek to compel PECO to comply with the PUC's regulations. Plaintiffs anticipated PECO's federal preemption defense. Plaintiffs' primary claim, then, does not fall within this court's federal question jurisdiction. *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). This claim does, however, fall within this court's special jurisdiction over cases "arising under title 11 or arising in or related to cases under title 11." 28 U.S.C. § 1471(b); *see also* 28 U.S.C. § 1334.

lated 11 U.S.C. § 525, which prohibits certain forms of governmental discrimination against persons who have filed bankruptcy petitions. *Third,* the Begleys claim that the PUC's violation of section 525 implies that the PUC has violated the Civil Rights Act of 1871, 42 U.S.C. § 1983. *Fourth,* the Begleys claim that, by applying their security deposit to their accumulated post-petition arrearage, PECO has unilaterally modified the amount of "adequate assurance" posted by the Begleys and that therefore PECO has violated section 366(b) of the Bankruptcy Code.

All parties having moved for summary judgment and having adequately rebriefed their positions, this court heard oral argument on the pending motions on June 1, 1984. Briefly stating my reasoning from the bench at that time, I granted plaintiffs' motion for summary judgment on their first claim as against PECO. I also granted the PUC's motion for summary judgment on the Begleys' section 1983 claim and I granted PECO's motion for summary judgment on the Begleys' fourth claim concerning the security deposit. I reserved judgment on the Begleys' section 525 claim. I requested rebriefing on the question of appropriate relief as against the PUC on the Begleys' first claim under section 366 and the PUC's regulations. This Memorandum explicates my June 1 reasoning more fully. The accompanying Order implements the rulings made at that time.

1. *Preemption of PUC Regulations by Section 366*

Section 366 provides as follows:

(a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366.

■ Section 366(a) prohibits utilities generally from discriminating against debtors in bankruptcy solely on the basis of debts incurred before the order for relief. *See generally* 2 L. King, *Collier on Bankruptcy* ¶ 366.02 (15th ed. 1984). In a chapter 7 proceeding, the voluntary petition in bankruptcy is the order for relief. 11 U.S.C. § 301. Section 366(a), therefore, does not apply to the Begleys' dispute with PECO. PECO did not serve notice of an intent to terminate the Begleys on the basis of their *pre*-petition arrearages. Instead, PECO attempted to terminate the Begleys' service on the basis of their *post*-petition arrearages.

Neither the PUC nor PECO contends that section 366(a) preempts the PUC regulations concerning termination of service in this case. Rather, both the PUC and PECO contend that section 366(b) preempts state regulation, at least to the extent of precluding the PUC from requiring PECO to enter into an amortized payment agreement with the Begleys. *See Anyanwu,* 55 Pa.P.U.C. at 222.

■ Section 366(b) permits a utility to terminate the service of a debtor for nonpayment of a pre-petition delinquency when neither the debtor nor the trustee in bankruptcy has posted "adequate assurance" of payment for post-petition utility bills. The bankruptcy courts are in agreement that section 366(b) vests in the bankruptcy court the exclusive responsibility for determining the appropriate security which a debtor must provide to his utilities to preclude termination of service for non-payment of pre-petition utility bills. *See, e.g., Hennen v. Dayton Power & Light Co.,* 17 B.R. 720 (Bankr.S.D.Ohio 1982); *In re RobMac, Inc.,* 8 B.R. 1 (Bankr.N.D.Ga.1979), *and* 8 B.R. 7

(Bankr.N.D.Ga.1980); *In re Stagecoach Enterprises, Inc.,* 1 B.R. 732 (Bankr.M.D. Fla.1979); *In re Cunha,* 1 B.R. 330 (Bankr. E.D.Va.1979). Thus, a state regulation prescribing a particular security deposit does not bind the bankruptcy court.

 The PUC reasons that because it has no jurisdiction to determine the appropriate security deposit or other assurance under section 366(b), "termination of service by the respondent under 11 USC § 366(b) cannot be stayed by the filing of a dispute" with the PUC. *Anyanwu,* 55 Pa. P.U.C. at 222. Bankruptcy Judge Cosetti has specifically approved this reasoning. *In re Coury,* 22 B.R. 766, 767 (Bankr.W.D. Pa.1982). I also agree that when section 366(b) applies, section 366(b) may have some preemptive effect. However, in my view the application of *Anyanwu's* reasoning to the Begleys' case is misplaced because section 366(b) does not apply to the termination proposed here by PECO.[3] Section 366(b), in my view, operates solely as an exception to section 366(a).

Only one court to my knowledge has held that section 366(b) has a life independent from section 366(a). *In re Santa Clara Circuits West, Inc.,* 27 B.R. 680 (Bankr.D. Utah 1982). The court there held that a utility could demand "adequate assurance" from a debtor who had no pre-petition delinquency. I disagree with that holding as a matter of syntax and as a matter of policy.

Section 366(a) begins "[e]xcept as provided in subsection (b) of this section, a utility may not ... discontinue service ...." 11 U.S.C. § 366(a). Further, section 366(b) provides that *"[s]uch* utility may ... discontinue service ...." 11 U.S.C. § 366(b) (emphasis added). "Such utility" evidently refers to the utility mentioned in subsection (a). Thus, the provisions of subsection (b) permitting utilities to discontinue service in the absence of "adequate assurance" only

apply in situations where the general rule of subsection (a) would otherwise prohibit the utility from terminating service. Subsection (a) only prohibits terminations on the basis of pre-petition delinquencies. PECO seeks to terminate the Begleys' service on the basis of a post-petition delinquency. Therefore, section 366(b) does not apply to the Begleys' dispute with PECO. *A fortiori,* section 366(b) cannot preempt any state regulation of a dispute to which it does not apply.

Further, as a matter of policy, to grant the utility the right to terminate utility service without complying with the applicable state procedures is to grant the utility leverage over a bankruptcy debtor which it would not have absent the petition in bankruptcy. "This is contrary to the intent of the bankruptcy laws." *In re Coury,* 22 B.R. at 768; *see also In re Keydata Corp.,* 12 B.R. 156, 158 n. 2 (Bankr.App.D.Mass. 1981).

I have not located any reported decision of a federal court deciding precisely the question presented here. However, several federal courts have expressly decided that section 366(b) operates solely as an exception to section 366(a). In *In re Coury,* 22 B.R. 766 (Bankr.W.D.Pa.1982), Judge Cosetti held that a utility had no right to adequate assurance of post-petition payments under section 366(b) when the debtor had no pre-petition delinquency; section 366(b) did not apply because section 366(a) did not apply. Judge King has followed Judge Cosetti's reasoning in our bankruptcy court. *In re Demp,* 22 B.R. 331 (Bankr. E.D.Pa.1982). Judge Goldhaber has as well. *In re Kelly,* 25 B.R. 249 (Bankr.E.D. Pa.1982); *In re Shirey,* 25 B.R. 247 (Bankr. E.D.Pa.1982).

Similarly, Judge Weiner has held that section 366(b) does not entitle a debtor to post adequate assurance and to obtain new telephone service when the telephone company had discontinued the debtor's service

---

**3.** While Judge Cosetti approved *Anyanwu's* reasoning, he did not specifically approve the PUC's application of that reasoning to the facts of *Anyanwu.* In all pertinent respects, *Anyanwu* and this case stand on all fours. In both cases the utility seeks termination on the basis of a post-petition arrearage. *See Anyanwu,* 55 Pa.P.U.C. at 221–222. I therefore do not mean my discussion in any way to approve the result in *Anyanwu.*

before the petition in bankruptcy. *In re Roberts,* 29 B.R. 808 (E.D.Pa.1983); *accord In re Matthews,* 24 B.R. 545 (Bankr.E.D. Pa.1982) (gas service). Judge Weiner reasoned that "[t]he basis of the termination [, that is the refusal of service,] was a reason other than solely the existence of a pre-bankruptcy debt." 29 B.R. at 810. Therefore, the debtor had no right to a bankruptcy court's determination of the appropriate security deposit for reinstitution of service. Instead, the debtor had to post an appropriate security deposit as provided in the "applicable tariffs ...." *Id.*

Section 366(a) takes something away from utilities. Under section 366(a), a utility may not use the fact of the filing in bankruptcy and the existence of a pre-petition delinquency as a basis to conclude that the debtor presents such a bad credit risk that the utility will terminate service. Section 366(b), however, provides some protection for the utility in the form of "adequate assurance." Except in the situation where a utility seeks to terminate service on the basis of a pre-petition delinquency, section 366 does not alter the relationship between the utility and the debtor as governed by the applicable state regulations. *Cf. Roberts,* 29 B.R. at 810; *but cf. Coury,* 22 B.R. at 768 (dictum).

## 2. *Appropriate Relief on Plaintiffs' First Claim*

■ The foregoing reasoning suggests that plaintiffs are entitled to a judgment declaring that section 366 does not preempt any of 52 Pa.Admin.Code chap. 56 as applied to this dispute with PECO. In addition, they may obtain mandatory relief requiring PECO to comply with the applicable state law. Appropriate relief against the PUC, an agency of the state, presents a more serious problem which the parties have not addressed. An injunction requiring the PUC to comply with its own regulations may be precluded by the Eleventh Amendment. *Pennhurst State School & Hospital v. Halderman,* — U.S. —, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). *Allegheny County Sanitary Authority v. United States Environmental Protection Agency,* 732 F.2d 1167, 1173–1174 (3d Cir.1984) ("*ALCOSAN*"). The Eleventh Amendment may also preclude declaratory relief to the same effect running against the PUC. Accordingly, the accompanying Order grants declaratory and injunctive relief against PECO, but orders further briefing as to appropriate relief against the PUC.

## 3. *Plaintiffs' section 525 Claim*

Plaintiffs claim that the PUC's decision in *Anyanwu,* as applied here, violates 11 U.S.C. § 525. Section 525 provides in pertinent part that "a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under" the Bankruptcy Code. Plaintiffs reason that, because section 366 does not preempt PUC jurisdiction to require PECO to enter an amortized payment agreement with plaintiffs, the PUC has discriminated against plaintiffs in the enforcement of its regulations solely on the basis of their status as bankruptcy debtors.

■ The PUC has resisted plaintiffs' section 525 claim on the ground that its *Anyanwu* decision and subsequent policy were made in good faith and with the objectives of the bankruptcy laws in mind. This court does not question the PUC's good faith. However, I do not doubt that a good faith discrimination prohibited by section 525 would nonetheless constitute a section 525 violation. Such a violation would justify declaratory and mandatory relief against the offending governmental unit.

A failure to exercise regulatory jurisdiction does not obviously fall within any of the categories of discrimination enumerated in section 525. However, considerable authority supports the proposition that section 525's enumeration is not exclusive. *See, e.g., Henry v. Heyison,* 4 B.R. 437 (E.D.Pa.1980); *In re Richardson,* 15 B.R.

925 (Bankr.E.D.Pa.1981), *rev'd on other grounds*, 27 B.R. 560 (E.D.Pa.1982); 3 L. King, *Collier on Bankruptcy* § 525.01 (15th ed. 1984). Because the PUC has not resisted this claim on the ground that section 525 does not prohibit this discrimination, the parties have not fully addressed this problem. I therefore retain under advisement the question whether this discrimination falls sufficiently close to the discriminations listed in section 525 to fall within that section's prohibitions: The parties may, if they wish, address this question in their supplemental submissions.

### 4. *Section 1983*

The Civil Rights Act of 1871 provides a private right of action to an individual who has suffered a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" against the person working that deprivation so long as the defendant acted "under color" of state law. 42 U.S.C. § 1983. In 1980, the Supreme Court held that violations of rights guaranteed to individuals by federal statutes constituted "rights ... secured by the ... laws" for purposes of section 1983. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). Following *Thiboutot,* several courts held that a violation of rights guaranteed by the Bankruptcy Act gave rise to section 1983 claims when the plaintiff could show the requisite state action. *In re Richardson*, 15 B.R. 925, 927–928 (Bankr.E.D.Pa.1981), *rev'd on other grounds*, 27 B.R. 560 (E.D.Pa.1982); *In re Gibbs*, 12 B.R. 737, 739–741 (Bankr.D.Conn. 1981); *In re Maya*, 8 B.R. 202 (Bankr.E.D. Pa.1981). Plaintiffs therefore contend that a violation of section 525 by a state agency necessarily gives rise to a section 1983 claim. *Richardson* and *Gibbs*, for example, both involved section 525 violations.

After the decisions in *Richardson, Gibbs,* and *Maya,* the Supreme Court decided *Middlesex County Sewerage Authority v. National Sea Clammers Association,*

453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). In that case the Supreme Court limited the application of *Thiboutot* to situations where the relevant federal statute did not have an adequate and comprehensive internal enforcement mechanism. *Sea Clammers* involved a plaintiff who had forfeited its right to sue under the citizen suit provision of the Clean Water Act because it failed to give proper notice as required by that Act. *See* 33 U.S.C. § 1365. The Court held that the plaintiff could not bring its action under section 1983 because the Clean Water Act provided a sufficiently comprehensive enforcement scheme to warrant the inference that Congress did not intend section 1983 to apply. 453 U.S. at 19–21, 101 S.Ct. at 2625–2626. In *ALCO-SAN* our Court of Appeals read the *Sea Clammers* holding broadly; the Court of Appeals held that no section 1983 claim could arise from a violation of the Clean Water Act, even when the citizen suit provision of that Act created no private right of action against the asserted violator. *ALCOSAN,* at 1174–1175.

■ The Bankruptcy Act provides a completely comprehensive enforcement scheme for violations of section 525. The parties do not dispute that a victim of prohibited discrimination under that section has a private right of action directly under that section and the jurisdictional grant of 28 U.S.C. § 1471. Application of section 1983 would simply duplicate the substantive claim. I therefore conclude that Congress did not intend to protect the rights declared by section 525 with a private claim under section 1983 in addition to the direct right of action under the Bankruptcy Act.[4] Because plaintiffs cannot prevail on their section 1983 claim, even if they prevail on their section 525 claim, I will grant summary judgment to the PUC on this claim.

### 5. *Use of the Security Deposit*

■ In their final claim, the Begleys assert that PECO improperly applied the

---

**4.** A section 1983 claim would implicate the Equal Access to Justice Act, 42 U.S.C. § 1988. Section 1988 permits a prevailing party to recover reasonable attorneys' fees. While this might

have a salutary effect on private enforcement of section 525, it does not appear that Congress wished to provide this inducement for private enforcement of the Bankruptcy Code.

Begleys' initial security deposit to their post-petition arrearage. The parties do not dispute that shortly after their bankruptcy filing the Begleys provided PECO with $312 as "adequate assurance" for payment of post-petition electricity bills. Further, the parties do not dispute that PECO has taken this deposit in partial satisfaction of those bills.

The Begleys argue that PECO's action amounts to a unilateral modification of the amount of adequate assurance posted pursuant to section 366(b). Plaintiffs point to the last sentence of 11 U.S.C. § 366(b) which requires a court hearing before any party may obtain a modification of the amount of adequate assurance posted by the debtor or trustee. The Begleys argue that PECO's action violates this sentence and that this court should order PECO to replace the $312 as a security deposit.

I disagree with the Begleys' characterization of PECO's action. PECO has not modified the amount of adequate assurance. Rather, PECO has used the adequate assurance deposit for precisely the purpose for which the deposit was intended—to pay for the post-petition electricity service in the event of the Begleys' delinquency. The last sentence of section 366(b) does not apply to this situation. Rather, that sentence merely provides a mechanism through which a debtor who desires a refund of some of his deposit, or a utility which desires an increase in the amount on deposit, may petition the bankruptcy court for a modification of the amount which constitutes "adequate assurance." So, for example, if PECO wished to obtain a further security deposit from the Begleys, PECO would have to petition the bankruptcy court under section 366(b). PECO need not, however, petition the bankruptcy court to apply the security deposit to the debt for whose payment the deposit provided security.

An appropriate Order follows.

## ORDER

For the reasons stated in the accompanying Memorandum:

1. Plaintiffs' motion for summary judgment on their claim for declaratory relief against the Philadelphia Electric Company is GRANTED. The Philadelphia Electric Company's cross-motion for summary judgment on that claim is DENIED.

a. 11 U.S.C. § 366 is hereby DECLARED not to preempt any portion of 52 Pa.Admin.Code chap. 56 (Shepard's 1983) as applied to termination of a bankruptcy debtor's utility service on the basis of the debtor's failure to pay for service rendered after the date of the order for relief in bankruptcy.

b. Defendant Philadelphia Electric Company is ORDERED to negotiate an amortized payment agreement with plaintiffs Josephine and Daniel Begley in accordance with its obligation to do so under 52 Pa.Admin.Code § 56.97(b) (Shepard's 1983).

2. The court RETAINS UNDER ADVISEMENT plaintiffs' motion for summary judgment and the Pennsylvania Public Utility Commission's cross-motion for summary judgment on plaintiffs' claim that the declaratory relief granted in paragraph 1(a) above should run against the Pennsylvania Public Utility Commission and that this court should order the Pennsylvania Public Utility Commission to assume jurisdiction over the informal complaint filed by plaintiffs Josephine and Daniel Begley pursuant to 52 Pa.Admin.Code § 56.163 (Shepard's 1983). The parties may supplement their submissions on these issues under the following schedule established at oral argument on June 1, 1984.

a. Plaintiffs and the Pennsylvania Public Utility Commission SHALL submit supplemental memoranda by June 15, 1984. Defendant Philadelphia Electric Company may, if it so desires, file a supplemental memorandum on the same date.

b. Any party may respond to the others' submissions by June 20, 1984.

3. The court RETAINS UNDER ADVISEMENT plaintiffs' motion for summary judgment and the Pennsylvania Public Utility Commission's cross-motion for summary judgment on plaintiffs' claim that the

Commission violated 11 U.S.C. § 525 by refusing to exercise jurisdiction over plaintiffs' informal complaint solely on the basis of the plaintiffs' pending petition in bankruptcy. The parties may supplement their submissions on this claim under the same schedule as that imposed by paragraph 2 of this Order.

4. The Pennsylvania Public Utility Commission's motion for summary judgment on plaintiffs' claim under 42 U.S.C. § 1983 is GRANTED and plaintiffs' motion for summary judgment on that claim is DENIED.

5. Philadelphia Electric Company's motion for summary judgment on plaintiffs' claim that Philadelphia Electric Company violated 11 U.S.C. § 366(b) by appropriating the security deposit posted by plaintiffs is GRANTED and plaintiffs' motion for summary judgment on that claim is DENIED.