**In re EXPRESS ONE INTERNATIONAL, INC., Debtor and Debtor–In–Possession.**

**Bankruptcy No. 95–41189.**

United States Bankruptcy Court, E.D. Texas, Sherman Division.

Jan. 12, 1998.

Marci L. Romick, Godwin & Carton, P.C., Dallas, TX, for Debtors.

Keith Ray, Majorie & Levine, Dallas, TX, for Astraea Aviation Services, Inc.

## OPINION

DONALD R. SHARP, Bankruptcy Judge.

The Court has before it an Objection and an Amended Objection to Claim for Administrative Expense filed by Astraea Aviation Services, Inc. d/b/a Dalfort Aviation ("Dalfort") which came on for hearing pursuant to regular setting. At the conclusion of the hearing, the Court granted the parties time to file briefs and took the matter under advisement. This opinion constitutes the Court's findings of facts and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052 and disposes of all issues before the Court at this hearing.

This matter started out as a claim by Dalfort for money alleged to be due because of the repair of two aircraft belonging to Debtor. Dalfort claims $1,470,261.28 consisting of services rendered on two aircraft, engineering services and hanger fees, pre- and post-judgment interest and attorney fees, costs and expenses.

Express One has filed a counterclaim asserting that Dalfort charged usurious interest and should have to forfeit the entire claim plus pay statutory penalties as well as delay damages for not completing the work in a timely fashion.

The issues to be determined by this Court are the reasonable value of the services performed by Dalfort in the maintenance and repair of the aircraft in question; whether Dalfort is entitled to payment for engineering services and hanger fees; whether Dal-

fort is entitled to interest; whether Dalfort is entitled to attorney fees; whether Express One can prevail on its claim of usury and whether Express One has a valid counter-claim for delays.

It is undisputed that all of the events involved in this case are post-petition events. Express One filed a chapter 11 petition in June of 1995 after voluntarily grounding its airplanes because of a dispute with the FAA over aircraft maintenance and over its record keeping procedures in regard to aircraft maintenance. Express One immediately embarked on a program to upgrade its maintenance and its maintenance records to an acceptable level so that certain aircraft could be returned to an airworthy status. To accomplish this, Debtor contracted with Dalfort, a maintenance provider at Love Field, to provide aircraft maintenance services on two aircraft. The aircraft have been identified as aircraft numbers 930 and 275. The parties entered into separate contracts for the work on each of the airplanes.

There is no dispute as to the fact that the aircraft were delivered to Dalfort's maintenance facility and that certain work was done on each of the aircraft. The dispute here centers around the amount of work done, the hourly rates charged, and several ancillary claims which will be addressed later. First, the Court must deal with the question of the reasonableness of the work and the reasonableness of the charges for the work performed.

At the outset of this case, Dalfort touted its computer tracking system of the work in progress as a state of the art system to allow accurate record keeping. The system is referred to as the "jet flex" system. However, the evidence establishes that the jet flex system is of more value as a marketing tool than as a record keeping device. The function of the computer in the jet flex system is simply to keep track of total time and material charged to specific job applications during the repair and maintenance on the aircraft. The real accuracy of the system depends on the manual entries made by each mechanic in connection with each function as that function is performed. To the extent that those entries are inaccurate or incomplete, there is no adequate cross-check of the system. The Court is convinced that the primary value of the jet flex system to Dalfort was to try to endow its record keeping with that aura of invincibility so the results would be readily accepted rather than questioned.

Debtor demonstrated clearly at trial that many of the entries in the job cards were inaccurate or at least unsupported. It was clear that in the area of Dalfort's billing for outside contractors that in one instance (the Tri Star work on aircraft 275) was billed to Dalfort and that Dalfort was unable to show the number of hours it in turn billed to Debtor for that work. The testimony also revealed that another outside contractor, A.O.G., billed 255.9 hours to Dalfort and that Dalfort in turn billed Debtor 306.93 hours for that work. It was also clearly shown through Mr. Davidson's testimony that several hours had been included twice in Dalfort's claim. It was also clearly shown that although each job card was supposed to deal with a specific repair function on the aircraft, Dalfort would use those cards to increase its billable time on other functions by including them on an improper card. The testimony established that this occurred because each card would contain an estimated number of hours to complete the particular function involved. On more than one occasion, the particular function was completed in much less than the estimated time. Rather than close that card with that amount of time shown, the Dalfort personnel would hold the card open and charge additional time to that card even though they were performing totally unrelated tasks. In fact, a memo from Dalfort's supervisors pointed out to the personnel on at least one occasion that there was additional time available on a card in this fashion.

The discrepancies in the jet flex system are important when one considers the burden of proof involved in this case. This is an administrative claim filed by Dalfort in the amount of $1,489,032.76. The law is too clear to require citation that the burden of proof on any creditor in any bankruptcy proceeding is to prove his claim by a preponderance of the evidence. It is not the function of the Debtor to disprove the claim but only

to cast sufficient doubt on the claim to destroy the prima facie validity afforded to proofs of claim in bankruptcy. Once that prima facie validity is destroyed, the burden of proof rests squarely on the claimant to prove his claim with particularity by a preponderance of the evidence. This Court is convinced that the Debtor has clearly demonstrated that the highly touted jet flex system is not endowed with any degree of reliability that would allow the claimant to simply place those records in evidence and argue that they must be accepted because they are a highly reliable and sophisticated computer tracking system. Therefore, Dalfort's burden in this case is to prove by a preponderance of the evidence that it has a viable administrative claim in the bankruptcy proceeding. Administrative claims such as the one at issue here are provided for at 11 U.S.C. § 503(b)(1)(A) which provides in pertinent part that the Court shall allow administrative expenses for "the actual, necessary costs and expenses of preserving the estate." There is no question but that the actual and necessary costs of returning these aircraft to airworthy status qualify as an administrative expense since the only hope for the preservation of the bankruptcy estate was to get the aircraft back into the air in a productive capacity as soon as possible. In order to establish that the expenses involved were both actual and necessary, the claimant must demonstrate that the charge is a reasonable one for the value or benefit bestowed upon the bankruptcy estate. It is axiomatic that unreasonable expenses, while they might be actual would never be necessary. Therefore, the only administrative claim that can be allowed in this case is the claim for the reasonable value of the services performed by Dalfort in connection with its work on the aircraft. *Zagata Fabricators Inc. v. Superior Air Products*, 893 F.2d 624 (3d Cir.1990); *In re Lease–A–Fleet, Inc.*, 140 B.R. 840 (Bkrtcy.E.D.Pa.1992); *In re: Pulaski Highway Express, Inc.*, 57 B.R. 502 (Bkrtcy. M.D.Tenn.1986)

■ As stated earlier, this Court is convinced that Debtor demonstrated a sufficient number of irregularities and inconsistencies in the charges reflected on certain job cards to cast doubt on the reliability of the Dalfort records placed into evidence. Dalfort took the position at the hearing that to the extent that Debtor could prove inaccuracies in the time cards, then the total claim should simply be reduced by those specific amounts. The Court does not believe that Debtor had the burden to sort through every card and demonstrate every inconsistency once it had demonstrated clearly that the cards were not reliable. In connection with work done on aircraft number 275, there were in excess of 1,800 cards to be considered. The Court believes that it is claimant's burden to demonstrate the accuracy of those cards rather than Debtor's burden to demonstrate their inaccuracy. It is also not the Court's function to have to dig through minute detailed records to determine the accuracy of each and every entry made on those documents. While the Court is not willing to accept the Dalfort "jet flex" records without question, the evidence did clearly show that Dalfort performed substantial and valuable services on the aircraft.

In connection with work done on aircraft 930, Dalfort asserted a claim of $159,572.67 for work done on aircraft 930. Express One presented conclusive evidence that $13,261.32 of that amount was improperly charged. Although a simple deduction of that amount would yield a figure to Dalfort of $146,311.84, the Court does not believe that Dalfort has established that as a reasonable value and benefit to the estate.

The Court was more impressed with the testimony of Sidney Hurst, who seemed extraordinarily qualified in this field. Mr. Hurst functioned as the director of maintenance for Express One and seemed very knowledgeable concerning the extent of the work to be performed, the reasonable time it might take to perform that work and the reasonable value thereof. His review of all of the records convinced him that the reasonable value of the work performed on aircraft 930 was $140,000. The Court accepts that testimony and finds that Dalfort has failed to demonstrate any amount in excess of that as the reasonable value of its services.

Dalfort's claim for work done on aircraft 275 is in the amount of $925,783.28. As

noted, there were in excess of 1,800 job cards to be considered and Debtor clearly demonstrated that there were numerous mistakes on specific cards. Dalfort again would solve this problem by simply reducing the claim by the amount of the cards that Debtor clearly demonstrated were inaccurate. The Court does not believe that this comports with the burden of proof imposed upon a claimant in a bankruptcy proceeding. Again, the Court must turn to the testimony of Sidney Hurst, the director of maintenance for Express one. Mr. Hurst testified that his review of the entire matter convinced him that the reasonable value of the work performed on aircraft 275 was $640,000. The Court finds that Dalfort has failed to demonstrate by a preponderance of the evidence any claim in excess of that amount. Therefore, the $640,000 will be accepted as the fair value for the work performed on aircraft 275.

In addition to the above claims, Dalfort has asserted additional claims for hanger rental and engineering charges. The hanger rental Dalfort is seeking to collect asserts that the work took 18 days longer than the original work scope intended and that therefore Dalfort is entitled to hanger rental for those additional days. Dalfort offered the testimony of Mr. Haines to substantiate its claim for the hanger rental charge. Mr. Haines' testimony was totally unconvincing in that his information was that the amount was calculated by computing one-sixth of Dalfort's "overhead" for the 18 day period involved. Mr. Haines admitted on cross-examination that he has no idea how that figure is arrived at and that he has done nothing to verify its accuracy. He also admitted that he had no knowledge of Dalfort ever asserting such a charge against any customer in the past. Clearly, claimant has failed to sustain its burden of proof that this is an actual, necessary or reasonable charge in connection with this bankruptcy estate. It also should be noted that no provision of the original agreement signed between the parties even addresses an extra charge for hanger rental. That claim must be disallowed. Another item charged by Dalfort is $6,000 for "engineering." The only testimony offered to sustain that charge was that this was the figure supplied by the director of engi-

neering to Mr. Haines who testified that he knew of no specific problem dealt with and was not aware of the amount of time involved in the claim. There also is no provision in the original agreement between the parties concerning the allowance of any engineering charge. Claimant has failed to discharge its burden of proof in connection with this claim.

Dalfort also seeks $181,276.81 in costs and attorney fees in connection with its pursuit of this administrative claim. Dalfort asserts that it is entitled to recover these costs and attorney fees since they were reasonably and necessarily incurred in connection with the claim under the contract for services performed. There is no question but that Dalfort has incurred considerable attorney fees in connection with the pursuit of this matter. The question for this Court to determine is whether or not Dalfort has demonstrated that those attorney fees are recoverable. In *In re Consolidated Bancshares, Inc.,* 785 F.2d 1249 (5th Cir.1986), the Court enunciated the rule of law holding that "a creditor's attorney must ordinarily look to his own client for payment, unless the creditor's attorney rendered services on behalf of the reorganization, not merely on behalf of his client's interest, and conferred a significant and demonstrable benefit to the debtor's estate and the creditors." The burden of proof of substantial benefit to the estate is squarely on the party claiming administrative expense status. *In re American 3001 Telecommunications, Inc.,* 79 B.R. 271 (Bkrtcy. N.D.Tex.1987) Dalfort simply asserts that the attorney fees are an integral part of the claim and therefore must be afforded administrative expense status. This Court cannot agree. The Fifth Circuit has clearly held contrary to that position and this Court can find no demonstrable benefit to the estate from the actions of Dalfort and its attorneys. It is clear that Dalfort's attorneys were at all times pursuing the business of their client and working diligently to recover the maximum amount of money possible for their client. The Court does not question their ability, their integrity nor their ethics. They represented their client well and deserve to be paid by their client. There is simply no evidence before this Court of any benefit to

the estate by virtue of the work performed by Dalfort's attorneys. The claim for attorney fees must be denied.

■■■■ Finally, Dalfort argues that it is entitled to recover some $80,000 in interest because the claim was not paid promptly. While the Court recognizes that an unreasonable delay by a Debtor in paying an admittedly due administrative expense might entitle the claimant to some interest payment, (*In re Mark Anthony Construction, Inc.*, 886 F.2d 1101 (9h Cir.1989)) this is not such a case. The testimony demonstrated in this case that there was a bonafide dispute concerning the amount of this claim from the date of the completion of the work until today. At no time was there an agreed upon liquidated claim without serious and real disputes between the parties as to the amount involved. Therefore, this is not a situation where Debtor unreasonably withheld payment of an administrative claim. The interest claim in this case must be analyzed as any other claim for interest in connection with an ordinary administrative claim. There is no provision in the Code to require or permit the payment of interest on an administrative claim. This matter has been discussed in *In re: John Clay and Company, Inc.*, 43 B.R. 797 (Bkrtcy.D.Utah 1984) and *In re Fred Swain, Inc.*, 97 B.R. 660 (Bkrtcy. S.D.Fla.1989) and without reiterating that discussion here, the Court notes that it agrees with the conclusion reached in those cases and *In re Lumara Foods of America, Inc.*, 50 B.R. 809 (Bkrtcy.N.D.Ohio 1985) and holds that Dalfort is not entitled to any interest on its administrative claim.

■■■■ Turning now to Express One's counterclaims, the principal one of which is a claim for $338,500 for Dalfort's alleged delay in delivering aircraft 275 to Express One. The initial contract under which these parties began their relationship did not provide a specific day for completion and delivery of the aircraft. Instead, there was an estimated date of completion. In the absence of a specific date agreed to by the parties Texas law implies a reasonable time period for completion of any task. Reasonable time is such time as is necessary to conveniently do what the contract requires to be done considering the circumstances surrounding the specific job in question. One must take into account the nature and character of the job to be performed the difficulties surrounding it and any unusual circumstances involved in each specific case. *See Hamilton v. Shirley—Self Motor Company*, 202 S.W.2d 952 (Tex.Civ. App.Fort Worth 1947) In the case at bar, the evidence established that work on aircraft 275 was delayed for a few days because Express One wanted the work on aircraft 930 completed first. The testimony clearly established that the parties were in constant contact during the work on the aircraft and Express One's internal documents demonstrated that it felt that the work was progressing on schedule and certainly made it appear that Express One had no dissatisfaction at the time of the work. On the counterclaim, Express One has the burden of proving its claim by a preponderance of the evidence. The Court finds that Express One has failed to do so and that there is no evidence to demonstrate that Dalfort failed to complete the project within the reasonable time contemplated by the contract. To the extent that Debtor suffered any additional expense in having to divert other aircraft to perform functions that it had planned for aircraft 275 to perform, the fault lies not with Dalfort's failure to complete the project on time but Debtor's failure to anticipate that the additional time might be required. After all, Debtor was as experienced in the aircraft business as Dalfort and should have been able to better anticipate the possibility that the repair and maintenance work might extend beyond the estimated completion date. The counterclaim by Debtor must be denied.

Express One claimed that Dalfort charged interest in excess of the amount allowed under Article 5069 of the Texas Revised Civil Statutes by sending an "invoice" to Express One after Dalfort filed its administrative claim.

■■■■ The word "charge" is not defined in Article 5069. However, Texas cases require that the usury statute be strictly con-

strued against a finding of usury.[1] Texas cases also provide that, if a transaction is susceptible to more than one reasonable construction when viewed as a whole, the Court must adopt the construction which comports with legality and refuse to find a usury violation.[2] The Texas Supreme Court has also ruled that the determination of whether one or more acts constitute the charging of interest "is a question of fact ... when there is any dispute in the evidence...." [3]

Both the Texas Supreme Court and the Fifth Circuit have determined that a claim for prejudgment interest arising in the context of a judicial proceeding "does not make a pleader liable for statutory usury penalties" because it is not a "charge" within the meaning of the statute.[4] As Judge Higginbotham has noted:

> A permissible construction of the statute is that a creditor seeking to recover interest as damages is not making a "charge" of interest. The interest claim is not rooted in a free contractual relationship between two private parties, but is an essential element of nonconsensual damages.[5]

Thus, where the act allegedly constituting the "charging" of usurious interest occurs in the context of identifying the damages being sought in a legal proceeding, the claimant has not established a usury violation.[6]

> A claim for prejudgment interest arising in the context of a judicial proceeding does not make a pleader liable for statutory usury penalties because it is not a "charge" within the meaning of the statute. Gibral-

tar Savings v. LD Brinkman Corp., 860 F.2d 1275, 1296 (5th Circuit), cert. Denied, 490 U.S. 1091, 109 S.Ct. 2432, 104 L.Ed.2d 988 (1989).[7]

Dalfort asserts that it never "charged" interest as is evidenced by the fact that any interest calculated by Dalfort never appeared in the books of either Dalfort or Express One. In other words, despite the language of the alleged "invoice," neither party treated it as a "charge." Although the invoice that Express One complains of standing alone, would appear to qualify as a "charge" of usurious interest, the Court does not believe usury is involved in this case. This is not one of those cases where the statement sent merely recited in a preprinted form that interest would be charged at some specified rate (normally one and one-half per month) but no interest was actually calculated on the invoice.[8] The interest was actually calculated and added to the invoice as a specific charge. The fact that insulates Dalfort from a usury claim is that Dalfort sent the invoice containing the alleged interest "charge" *after* Dalfort had filed its administrative claim and when both parties admitted that they knew the Court would be deciding if and how much interest should be paid to Dalfort. The invoice containing the claim for interest was sent in the context of the parties litigation posturing and was an apparent attempt by Dalfort to buttress its position in the litigation by simply including therein all possible claims to which it might be entitled. Thus, the Court finds that no usury violation oc-

---

1. *See Houston Sash and Door Co. v. Heaner*, 577 S.W.2d 217 (Tex.1979); *First State Bank v. Miller*, 563 S.W.2d 572, 577 (Tex.1978)

2. *See Stacks v. East Dallas Clinic*, 409 S.W.2d 842, 845 (Tex.1966).

3. *See First Bank v. Tony's Tortilla Factory*, 877 S.W.2d 285, 287 (Tex.1994) (emphasis added).

4. *See George A. Fuller Co. v. Carpet Services*, 823 S.W.2d 603, 606 (Tex.1992); *Gibraltar Savings v. LDBrinkman Corp.*, 860 F.2d 1275, 1296 (5th Cir.1988), *cert. denied*, 490 U.S. 1091, 109 S.Ct. 2432, 104 L.Ed.2d 988 (1989).

5. *See Fibergrate Corp. v. Research–Cottrell, Inc.*, 481 F.Supp. 570, 572 (N.D.Tex.1979) (Higginbotham, J.).

6. *See Missouri–Kansas–Texas Railroad Co. v. Fiberglass Insulators*, 707 S.W.2d 943, 948 & 950–951 (Tex.App.—Houston 1986) (holding that the testimony of an accountant that he estimated his company's damages to include a "fair' rate to charge each year the debt was owed" was "too little too late to constitute usury as a matter of law," in light of the requirement that the Court strictly construe the statute and the transaction and the "strong public policy favoring recovery of prejudgment interest").

7. *See* Order denying Dalfort's Motion to Dismiss entered on April 24, 1995 at 5.

8. *See Killebrew v. Bartlett*, 568 S.W.2d, 915 (Tex. Civ.App.—Amarillo 1978, no writ). *Thomas Conveyor Company, Inc. v. Portec, Inc.*, 572 S.W.2d, 361 (Tex.Civ.App.—Waco 1978)

curred because the purported "demand" was *first-made* in the context of a lawsuit.

For the above stated reasons, Express One's counterclaim for usury is denied in all respects and Express One shall take nothing with respect to it.

For all of the above reasons, Dalfort's administrative claim will be allowed in the amount of $140,000 for aircraft 930 and $640,000 for aircraft 275, making the total administrative claim $780,000. The counterclaims of Express One against Dalfort are denied in their entirety. AH taxable costs of this proceeding will be taxed against Dalfort Aviation.