## In re BAKE–LINE GROUP, LLC, et al., Debtors.

### No. 04–10104 MFW.

United States Bankruptcy Court, D. Delaware.

July 22, 2004.

Christopher James Lhulier, Laura Davis Jones, Pachulski, Stang, Ziehl, Young & Jones, PC, Wilmington, DC, for debtor.

Christopher Martin Winter, Michael R. Lastowski, Duane Morris LLP, Wilmington, DC, for Montague S. Claybrook, trustee.

## *OPINION* [1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court is the Application of Dominion Peoples ("Dominion") for Payment of Administrative Expenses for utility gas service provided to Atlantic Baking Group, Inc. ("the Debtor") after the filing of its chapter 7 petition. The Trustee opposes the Application. For the reasons stated below, we grant the Application, in part.

## I. *FACTUAL BACKGROUND*

On August 1, 2002, the Debtor entered into a non-residential real property lease ("the Lease") with Regional Industrial Development Corporation of Southwestern Pennsylvania ("RIDC") for property located at 6425 Penn Avenue, Pittsburgh, Pennsylvania ("the Facility").

On January 12, 2004 ("the Petition Date"), the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code. On January 30, 2004, the United States Trustee appointed Montague S. Claybrook ("the Trustee") to serve as chapter 7 trustee. Following his appointment, the Trustee filed a motion to reject the Lease which incorporated a stipulation between RIDC and the Trustee. On February 25, 2004, the Court approved the

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052, which is made applicable to contested matters by Federal Rule of Bankruptcy Procedure 9014.

stipulation, which retroactively terminated the Lease as of January 30, 2004.

On May 4, 2004, Dominion filed the Application seeking payment (from either RIDC or the estate) of $62,645.77 for gas service provided to the Facility from the Petition Date to February 29, 2004. On May 14, 2004, RIDC responded to the Application denying responsibility for the charges. The Trustee filed an Objection to the Application on May 17, 2004, asserting that the stipulation granted RIDC control over the Facility and the assets contained therein effective as of February 1, 2004. A hearing was held on Dominion's Application on May 21, 2004. The parties have filed post-hearing letter briefs and the matter is ripe for decision.

## II. *JURISDICTION*

This Court has jurisdiction over the Application pursuant to 28 U.S.C. §§ 1134 & 157(b)(1), (b)(2)(A) & (B).

## III. *DISCUSSION*

### A. *Adequate Assurance of Payment*

■ Dominion seeks payment of an administrative expense for the cost of providing natural gas service to the estate post-petition. The Trustee contends that Dominion may not assert an administrative claim because it failed to request priority status *before* providing that service. The Trustee asserts that utilities that do not receive a post-petition promise of administrative priority under section 366 cannot expect such status. *See, e.g., In re Woodland*, 48 B.R. 623 (Bankr.D.N.M.1985).

We disagree. In *Woodland*, the parties negotiated an adequate assurance stipulation providing for a $3,000 deposit; they did not, however, include administrative priority as part of the assurance. Accordingly, the *Woodland* Court concluded that by excluding priority status, the parties

willingly chose to forego that option as a means of assurance. *Id.* at 625. In this case, Dominion neither requested adequate assurance, nor willingly elected to surrender its right to administrative status for other assurances.

Section 366(b) does not require that utilities seek administrative claim status. Instead, that section provides:

Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366(b). In fact, that section suggests that utilities be given adequate assurance of payment in the form of "a deposit or other security." Further, it does not require that the utility take any action; the burden is on the debtor to offer adequate assurance, or the utility will be able to discontinue service. *See, e.g., In re Begley*, 41 B.R. 402 (E.D.Pa.1984). The intent behind section 366(b) is not to *diminish* a utility's rights but to provide *additional* protection. *Id.* at 407.

Therefore, we conclude that section 366(b) does not preclude us from granting Dominion's request for an administrative claim.

### B. *Benefit to the Estate*

■ Dominion contends that its claim for post-petition services is an administrative expense because it provided a benefit to the estate. Administrative claim status is given to "the actual and necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Generally, a

creditor seeking a post-petition administrative expense claim has the burden of demonstrating that its service conferred a benefit on the estate. *See In re Unidigital, Inc.*, 262 B.R. 283, 288 (Bankr.D.Del. 2001).

■ In this case, the Trustee argues that the estate did not have any leasehold interest, control, or business operations at the Facility during the month of February because according to the stipulation with RIDC the Lease was rejected retroactive to January 30, 2004. However, Dominion was not a party to that stipulation and, therefore, is not bound by its terms. Further, when a lease has been rejected and the debtor continues to use the property, the debtor remains responsible for that use as an administrative claim. *See In re Integrated Health Servs., Inc.*, 289 B.R. 32, 35 (Bankr.D.Del.2003). Accordingly, the Debtor remains liable for the expenses incurred while it remained in possession of the Facility post-rejection.

In fact, the Trustee admits that he was still in possession of the Facility during February. (The stipulation was not approved until February 25, 2004.) He further admits that gas was used during February "to prevent pipes from freezing and boilers from malfunctioning." During that time, the Trustee was endeavoring to sell the equipment located at the Facility. We find that the use of utility service to preserve equipment did confer a benefit on the estate because it prevented a decrease in the net worth of the estate.

C. *Amount of Administrative Expense*

■ Despite admitting that gas was supplied to the Facility at a time when the estate remained in possession, the Trustee objects to the Application because he did not have a contract with Dominion and because Dominion's bill was excessive.

Dominion responds that, in accordance with Pennsylvania law, when the Debtor's previous gas provider, UGI, discontinued service to the facility, Dominion became the supplier of last resort. Dominion asserts that it provided service to the Facility at the rates approved by the Pennsylvania Public Utility Commission. Dominion notified the Trustee that it would provide last resort service to the Facility with a rate change effective February 2, 2004.

The Pennsylvania statute provides that when a natural gas supplier defaults or discontinues service, gas service to the customer will be continued by a supplier of last resort. The rate of the discontinuing supplier will be charged for the remainder of the billing cycle. Starting with the next billing cycle, the supplier of last resort will charge the Pennsylvania Public Utility Commission approved last resort rate. 66 Pa.C.S.A. § 2207(k). Thus, in this case, Dominion charged $79.36 per day (the rate of the discontinuing supplier) for the period from January 12 to February 2 and $2,255.55 per day (the last resort rate) for the period from February 2 to 29.

To constitute an actual and necessary cost under section 503(b)(1)(a), Dominion must establish that the amount charged was reasonable for the value or benefit conferred on the estate. *See In re Express One International, Inc.*, 217 B.R. 207, 211 (Bankr.E.D.Tex.1998). The rate assessed by Dominion between January 12 and February 2 was the same rate the Debtor had paid its previous supplier. Given that this rate was freely negotiated in the open market, we conclude that this daily fee constitutes a reasonable, market rate. In contrast, there is no evidence that the last resort rate is a market rate or otherwise reasonable.

■ While Dominion has the right to charge the last resort rate in the absence of a bankruptcy case, the increased rate is

unreasonable and cannot be accorded administrative priority status. Unreasonable expenses, while they may be actual costs, are not "necessary" costs to a bankruptcy estate. *Id.*

As a result, we will grant Dominion an administrative priority claim in the amount of $3,729.92, which represents a charge of $79.36 per day from the Petition Date to February 29, 2004.

## IV. *CONCLUSION*

For the foregoing reasons, the Application of Dominion Peoples for Payment of Administrative Expenses will be granted, in part.

An appropriate Order is attached.

### *ORDER*

AND NOW this 22nd day of July, 2004, upon consideration of the Application of Dominion Peoples for Payment of Administrative Expenses for utility gas service provided to Atlantic Baking Group, Inc., and the opposition thereto, and for the reasons stated in the accompanying Opinion, it is hereby

**ORDERED** that Dominion Peoples is **GRANTED** an administrative priority claim in the amount of $3,729.92.