In re Theresa M. LESNIEWSKI, Debtor.

Theresa M. Lesniewski, Plaintiff,

v.

C. Richard Kamin, Individually and in his capacity as Director of the New Jersey Division of Motor Vehicles, Peter Verniero, Individually and in his capacity as Attorney General of New Jersey, New Jersey Automobile Full Insurance Underwriting Assn., New Jersey Market Transition Facility, Defendants.

Bankruptcy No. 98–15226DWS.
Adversary No. 99–0215.

United States Bankruptcy Court, E.D. Pennsylvania.

March 13, 2000.

Henry J. Sommer, Miller, Frank & Miller, Philadelphia, PA, for plaintiff/debtor.

John J. Farmer, Jr., Marc Krefetz, Trenton, NJ, for defendants.

## OPINION

DIANE WEISS SIGMUND,
Bankruptcy Judge.

Before the Court is the Plaintiff's Motion for Attorney's Fees (the "Motion") incurred in connection with the above captioned adversary proceeding which raised violations of 11 U.S.C. §§ 524 and 525 and 42 U.S.C. § 1983. Fees in the amount of $7,257 are sought by debtor Theresa Lesniewski ("Plaintiff") as the "prevailing party" pursuant to 42 U.S.C. § 1988. With the exception of the claim for attorney's fees, the adversary proceeding was resolved by a consent order approved on October 21, 1999. The defendants C. Richard Kamin and John J. Farmer (the "New Jersey Officials")[1] claim immunity from the Motion under the Eleventh Amendment. In the event I disagree with

their sovereign immunity defense, they also dispute plaintiff's entitlement to attorney's fees under 42 U.S.C. § 1988.

## BACKGROUND

On March 17, 1999, Plaintiff filed a complaint against the New Jersey Officials, the NJ Automobile Full Insurance Underwriting Association ("JUA") and the New Jersey Market Transition Facility ("MTF") seeking a determination that any insurance surcharge obligations for the benefit of the JUA and MTF[2] were discharged in bankruptcy and an injunction restraining collection of such surcharges and prohibiting the New Jersey Attorney General from enforcing certain New Jersey laws related to insurance surcharges as being in conflict with the discharge provisions of the United States Bankruptcy Code.[3] The complaint alleged that the New Jersey Officials, and their employees and agents, have sought to collect discharged debts for insurance surcharges in violation of the discharge injunction of § 524. Moreover, the complaint alleged that the New Jersey Officials, and their employees and agents, violated § 525 by suspending Plaintiff's driver's license on account of the discharged debt and conditioning restoration on its payment. Finally Plaintiff alleged that the defendants, acting under color of state law, *i.e.*, NJSA 17:29A–35, deprived Plaintiff of her rights and privileges under federal law in violation of 42 U.S.C. § 1983. The latter count is the nexus to the instant Motion since § 1983 actions carry with them potential entitlement to attorney's fees under 42 U.S.C. § 1988.

---

1. Peter Veniero was named as defendant individually and in his capacity as the New Jersey Attorney General. However, Veniero is no longer the New Jersey Attorney General. Rather John J. Farmer, Jr. holds that position and specially appears with Kamin, likewise named individually and in his capacity as Director of the New Jersey Division of Motor Vehicles, to contest jurisdiction.

2. These entities are or were non-profit associations consisting of all the companies that wrote auto insurance in New Jersey. MTF succeeded to the business of JUA. They are

alleged to receive the funds collected by the New Jersey Officials and their agents and employees. They are not state agencies.

3. Neither JUA nor MTA filed an answer to the complaint, and it is not clear whether the State of New Jersey Attorney General purported to represent them. Given the consent order agreeing to the dismissal of JUA and MTA, that ambiguity is not germane to the outstanding dispute, it being clear that attorney's fees are sought only against the New Jersey Officials.

At the time of the acts in question the only reported decisions in New Jersey supported the defendants' view of the law that surcharges levied for driving offenses were nondischargeable. *In re Kent,* 190 B.R. 196 (Bankr.D.N.J.1995); *In re Curtin,* 206 B.R. 694 (Bankr.D.N.J.1996); *In re Kish,* 204 B.R. 122 (Bankr.D.N.J.1997).[4] Accordingly, following the Plaintiff's discharge and the concomitant termination of the automatic stay, the New Jersey Officials notified Plaintiff to resume payment of her surcharge debt.

On March 15, 1999 the Debtor obtained an Order reopening her bankruptcy case, and filed the complaint on April 8, 1999. Thereafter on August 30, 1999, the bankruptcy court in *Kish* reversed its previous ruling on the dischargeability issue, 238 B.R. 271 (Bankr.N.J.1999). No appeal was taken.

With a split of New Jersey authority on the dischargeability of surcharges, the New Jersey Officials offered a settlement which is memorialized in the Consent Order dated October 21, 1999. Doc. No. 12. It provides for the dischargeability of the unpaid insurance surcharges and an injunction against the State of New Jersey and/or its officials to collect such debt or to suspend Debtor's driving privileges for any prepetition surcharges so discharged. As part of the parties' understanding, the Consent Order left open the issue of Plaintiff's entitlement to attorney's fees which

she now presses and the New Jersey Officials resist.

## DISCUSSION

### A. *Sovereign Immunity*

■ The New Jersey Officials are, of course, correct when they state that the Eleventh Amendment of the Constitution bars suit against a state in federal court and that such bar remains in effect when state officials are sued in their official capacity because "a judgment against a public servant in his official capacity imposes liability on the entity that he represents."[5] *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). However, this general principle is subject to the Supreme Court's decision in *Ex parte Young, supra,* that "[i]n an injunction or declaratory action grounded on federal law, the State's immunity can be overcome by naming state officials as defendants." *Kentucky v. Graham, supra,* 473 U.S. at 169 n. 18, 105 S.Ct. 3099. *See also Edelman v. Jordan,* 415 U.S. 651, 667, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (reaffirming the principle that state officers are not immune from prospective injunctive relief). Therefore, sovereign immunity principles would not have barred prosecution of the adversary action against the New Jersey Officials since the relief sought was prospective, *i.e.,* a declaration that the insurance surcharges were discharged and an injunction against their collection and the suspension of her driving privileges as a result thereof.[6] This is

---

**4.** In an appeal of that ruling, the District Court found the State of New Jersey immune from suit and remanded for a determination of whether defendants Farmer and Kamin were subject to suit in federal court under the doctrine enunciated in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *In re Kish,* 212 B.R. 808 (D.N.J.1997). On remand, the bankruptcy court found that *Ex parte Young* carved an exception to Eleventh Amendment immunity when there is no state forum available or where the case calls for an interpretation of federal law. ° *In re Kish,* 221 B.R. 118 (Bankr.D.N.J.1998).

**5.** To this extent I have no quarrel (and presumably neither does the Debtor) with the jurisprudential principles set forth on pages 5

through 8 of the Memorandum of Law in Opposition to Debtor's Application for Attorney's Fees Against State of New Jersey Officials Under 42 U.S.C. § 1988 ("Memorandum"). They are simply not applicable here where the action was not brought for damages as in *Kentucky v. Graham* but rather for declaratory and injunctive relief and attorney's fees.

**6.** In the Supreme Court's recent decisions in *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) and *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), the Court found the *Ex parte Young* doctrine inapplicable to suits against state officials seeking what had heretofore been

significant because absent jurisdiction over the underlying claim, there is no jurisdiction over the claim for attorney's fees. *Kentucky v. Graham*, 473 U.S. at 164, 105 S.Ct. 3099 ("Thus, liability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant."). *See also W.G. v. Senatore*, 18 F.3d 60, 64 (2d Cir.1994) (fee shifting provisions such as § 1988 do not confer subject matter jurisdiction but require jurisdiction to proceed with the substantive claim under the civil rights laws); *Bergman v. United States*, 844 F.2d 353, 355 (6th Cir.1988) (since no cause of action existed under civil rights acts against United States due to its legal immunity, it could not be liable for attorney's fees under § 1988). Moreover, Plaintiff's demand

for attorney's fees does not alter the essential nature of this lawsuit so as to make applicable here holdings from cases where the plaintiff sought damages against the state defendant.[7] Rather a claim for attorney's fees may lie against state officials, without regard to the Eleventh Amendment, in connection with the enforcement of prospective relief permissible under *Ex parte Young*.

In *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), the Supreme Court considered the appropriateness of two demands for attorney's fees against state officials. The first related to the unchallenged findings of the lower court that state prison officials had acted in bad faith in employing certain practices which violated the prisoners' Eighth Amendment right against cruel and unusual punishment. Accordingly, the Court af-

found fair game as "prospective relief." Neither of the parties address these decisions in their briefs. The *Seminole* Court in a 5–4 opinion concluded that Congress had created a remedial scheme for the enforcement of rights under the Indian Gaming Regulatory Act, and that scheme could not be supplemented and thereby expanded by allowing suit against a state officer under *Ex parte Young*. 517 U.S. at 73–75, 116 S.Ct. 1114. In the closely following *Coeur d'Alene* decision, the basis for the Court's ruling cannot be as easily summarized given the absence of a majority on anything but the result and the recognition that sovereignty over submerged lands represents a "particular and special circumstance." 521 U.S. at 289, 117 S.Ct. 2028. While Justice Kennedy joined by the Chief Justice suggest a new case by case balancing test to replace the historic bright line retroactive/prospective relief test, *id.* at 277–280, 117 S.Ct. 2028, they fail to command the support of their brethren on this point. Rather Justice O'Connor in her concurrence, joined by Justices Thomas and Scalia, rejects the principal opinion's unnecessary recharacterization and narrowing of the Court's *Young* jurisprudence. *Id.* at 291, 117 S.Ct. 2028. Taking into consideration the four member dissent that concluded that the relief sought by the Tribe was prospective and therefore subject to the *Ex Parte Young/Edelman* exception, it would appear that the doctrine is still viable notwithstanding the ground swell of commentary on its "erosion" by these decisions. *See,*

*e.g.*, Vazquez, Night and Day: Coeur d'Alene, Breard, and the Unraveling of the Prospective–Retrospective Distinction in Eleventh Amendment Doctrine, 87 Geo.L.J. 1 (1998); Thomas, The Withering Doctrine of ex Parte Young, 83 Cornell L.Rev. 1068 (1998); Note, An Old Doctrine Assaulted: Kennedy Attempts to Eviscerate Ex Parte Young, 24 Ohio N.U.L.Rev. 369 (1998). *But see* Barrett, Edward T. Young Still Living the Good Life: Coeur d'Alene Tribe v. Idaho, 73 Notre Dame L.Rev.1977 (1998); Currie, *Ex Parte Young* After Seminole Tribe, 72 N.Y.U.L.Rev. 547 (1997). Given the activism of this Supreme Court in articulating a more expansive view of Eleventh Amendment immunity than assumed prior to *Seminole* (*e.g. Kimel v. Florida Board of Regents*, —— U.S. ——, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999)), we may have not heard the end of this debate. However, it appears safe to conclude that there are no special circumstances that limit the application of the *Ex parte Young* doctrine in this case.

7. Once again I have no quarrel with the cases cited by the New Jersey Officials in their brief and the proposition which the cases stand for, *i.e.*, § 1983 is not a Congressional abrogation of a state's sovereign immunity. *See* Memorandum at 10–11. These decisions involving suits against states are simply not applicable here where the actions are against state officials under the *Ex parte Young* doctrine.

firmed the district court's remedial order as well as imposition of an attorney's fee of $20,000, finding the latter not to be barred by the Eleventh Amendment.[8] Referring to its decision in *Edelman,* it reiterated that the line between retroactive and prospective relief cannot be so rigid that it defeats the effective enforcement of prospective relief.[9] Having previously found that the state's treasury could be tapped to implement prospective relief, it was not difficult for the Court to similarly reason that litigation costs associated with an award of prospective relief could likewise be imposed.

> In exercising their prospective powers under *Ex parte Young* and *Edelman v. Jordan,* federal courts are not reduced to issuing injunctions against state officers and hoping for compliance. Once issued an injunction may be enforced.... The principles that inform Eleventh Amendment doctrine surely do not require federal courts to enforce their decrees only by sending high officials to jail. The less intrusive power to impose a fine is properly treated as ancillary to the federal court's power to impose injunctive relief.

> In this case, the award of fees for bad faith serves the same purpose as a remedial fine for civil contempt. It vindicated the District Court's authority over a recalcitrant litigant.... We see no reason to distinguish this award from any other penalty imposed to enforce a prospective injunction. Hence the substantive protections of the Eleventh

Amendment do not prevent an award of attorney's fees against the Department's officers in their official capacity.

*Hutto,* 437 U.S. at 690–92, 98 S.Ct. 2565.

Notably this part of the *Hutto* decision is not implicated in the present matter where there is no allegation of bad faith and indeed the facts suggest just the opposite. Rather it is the second part of the opinion which addresses the additional $2,500 award made by the Circuit Court of Appeals to cover the fees and expenses of the appeal that is applicable. That fee award was affirmed relying on the Civil Rights Attorney's Fee Awards Act of 1976, 42 U.S.C. § 1988 (the "Act"). Referring to its decision in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (involving the Civil Rights Act of 1994, *i.e.,* Title VII), the Court stated:

> Congress has plenary power to set aside the States' immunity from retroactive relief in order to enforce the Fourteenth Amendment. When it passed the Act, Congress undoubtedly intended to exercise that power and to authorize fee awards payable by the States when their officials are sued in their official capacities. The Act itself could not be broader. It applies to "any" action brought to enforce certain civil rights laws. It contains no hint of an exception for States defending injunction actions; indeed, the Act primarily applies to laws passed specifically to restrain state action. *See, e.g.* 42 U.S.C. § 1983.

*Id.* at 693–94, 98 S.Ct. 2565. However, the Court did not stop there. In rejecting the

---

**8.** The Attorney General argued only that the fee order required payment from public funds in violation of the Eleventh Amendment. He acknowledged that an equity court has the power to award attorney's fees against a party who acts in bad faith in the course of litigation or by impeding the enforcement of a court order. *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). An exception to the "American Rule" whereby each litigant is charged with its own costs and attorneys fees absent a statute providing otherwise, this equitable principle "vindicates judicial authority without resort to the more

drastic sanctions available for contempt of court and makes the prevailing party whole for expenses caused by his opponent's obstinacy." *Id.* at 688 and n. 14, 98 S.Ct. 2565.

**9.** *Edelman* recognized that the difference between retroactive and prospective relief was often not clear cut, and emphasized that the distinction would not immunize a state from its obligation to obey costly federal court orders. It found the cost of compliance to be "ancillary" to the prospective order enforcing federal law. 415 U.S. at 667, 94 S.Ct. 1347.

Attorney General's argument that a more explicit statutory mandate was necessary to impose liability on the States,[10] it noted that costs have traditionally been awarded without regard for the States' Eleventh Amendment immunity. *Id.* at 695, 98 S.Ct. 2565.[11] Quoting from its decision in *Fairmont Creamery Co. v. Minnesota*, 275 U.S. 70, 48 S.Ct. 97, 72 L.Ed. 168 (1927), where the State's claim of immunity for statutory attorney's fees was likewise rebuffed, the Court reiterated:

> The power to make the award was supported by "the inherent authority of the Court in the orderly administration of justice as between all parties litigant." *Id.*, at 74, 48 S.Ct. 97. A federal court's interest in orderly, expeditious proceedings "justifies [it] in treating the state just as any other litigant, and in imposing costs upon it" when an award is called for. *Id.*, at 77, 48 S.Ct. 97.

*Id.* at 696, 98 S.Ct. 2565. The Court observed that "*Fairmont Creamery* has been widely understood as foreclosing any Eleventh Amendment objection to assessing costs against a state in all federal courts." *Id.* at 696 n. 26, 98 S.Ct. 2565 (*citing, inter alia, Skehan v. Board of Trustees*, 538 F.2d 53, 58 (3d Cir.1976) (en banc)), and found no need for Congress to explicitly abrogate the States' Eleventh Amendment immunity each time it amends its definition of taxable costs as such costs do not impose the hardship that is the basis for the immunity. Recognizing that fees are not routinely awarded, the Court nonetheless noted the large number of statutory and common law situations in which allowable costs include attorney's fees and refused to single out attorney's fees as the one kind of litigation cost whose recovery may not be authorized by Congress without an express statutory waiver of the States' immunity. Notably, however, it distinguished the cases relied on by the State as based on a statute rooted in the Article I [12] whereas the claims in *Hutto* and *Fitzpatrick v. Bitzer* are based on a statute enacted to enforce the Fourteenth Amendment.

The Supreme Court revisited its *Hutto* decision in *Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), in response to a state claim that the principle therein had been undermined by its subsequent decisions "that require Congress to 'express its intention to abrogate the Eleventh Amendment in unmistakable language in the statute itself.'" *Id.* at 279, 109 S.Ct. 2463 (*quoting Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 243, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985)). The Court stated that "after *Hutto*, it must be accepted as settled that an award of attorney's fees ancillary to prospective relief is not subject to the strictures of the Eleventh Amendment." *Id.* It found the petitioner's argument to be premised on a misreading of the holding of *Hutto*, stating:

> It is true that in *Hutto* we noted that Congress could, in the exercise of its enforcement power under § 5 of the Fourteenth Amendment, set aside the States' immunity from retroactive damages, 437 U.S., at 693, 98 S.Ct., at 2574–

---

**10.** The Court distinguished the cases that have so held as concerning retroactive liability for prelitigation conduct as opposed to the reimbursement for the costs incurred in seeking prospective relief. *Id.* at 695 n. 24, 94 S.Ct. 1347.

**11.** The Court stated:
> Moreover, like the power to award attorney's fees for litigating in bad faith, the power to assess costs is an important and well-recognized tool used to restrain the behavior of parties during litigation. *See e.g.*, Rule 37(b) (costs may be awarded for failure to obey discovery order); Rule 30(g) (costs may be awarded for failure to attend a deposition or for failure to serve a subpoena). When a State defends a suit for prospective relief, it is not exempt from the ordinary discipline of the courtroom.

*Id.*

**12.** *Edelman v. Jordan, supra* (claim based on Social Security Act); *Employees v. Missouri Public Health & Welfare Dept.*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973) (claim based on Fair Labor Standards Act.)

75, citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), and that Congress intended to do so in enacting § 1988, 437 U.S., at 693–694, 98 S.Ct., at 2574–2575. But we also made clear that the application of § 1988 to the States did not depend on congressional abrogation of the States' immunity. We did so in rejecting precisely the "clear statement" argument that Missouri now suggests has undermined *Hutto*.... We responded [to Arkansas' argument] as follows: "[T]hese cases [*Employees* and *Edelman*] concern retroactive liability for prelitigation conduct rather than expenses incurred in litigation seeking only prospective relief. The Act imposes attorney's fees 'as part of the costs.' Costs have traditionally been awarded without regard for the States' Eleventh Amendment immunity." *Ibid.*
The holding of *Hutto*, therefore, was not just that Congress had spoken sufficiently clearly to overcome Eleventh Amendment immunity in enacting § 1988, *but rather that the Eleventh Amendment did not apply to an award of attorney's fees ancillary to a grant of prospective relief. See Maine v. Thiboutot*, 448 U.S. 1, 9, n. 7, 100 S.Ct. 2502, 2507, n. 7, 65 L.Ed.2d 555 (1980). That holding is unaffected by our subsequent jurisprudence concerning the degree of clarity with which Congress must speak in order to override Eleventh Amendment immunity, and we reaffirm it today.

*Id.* at 279–80, 109 S.Ct. 2463 (emphasis added).

The decisions in *Hutto v. Finney* (eighth amendment cruel and unusual punishment) and *Missouri v. Jenkins* (fourteenth amendment school desegregation) involve civil rights claims. In *Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980), the petitioner contended that a federal court is barred from awarding fees against a state in a case involving a purely statutory, non-civil rights claim. The plaintiff in *Maher*, a recipient of federally funded aid to families, brought suit alleging that her constitutional and statutory rights were violated. Like the instant case, the suit was resolved by a consent order.[13] The Court refused to reach the issue framed by the petitioner as it found that constitutional issues remained in the case until the entire dispute was settled by the consent order, and as such the Eleventh Amendment claim was foreclosed by *Hutto v. Finney*. It then shed further light on its decision in that case, stating:

In *Hutto*, we rejected the argument of the Attorney General of Arkansas that the general language of § 1988 was insufficient to overcome a State's claim of immunity under the Eleventh Amendment, noting that "[t]he Court has never viewed the Eleventh Amendment as barring such awards, even in suits between States and individual litigants." *Id.*, at 695, 98 S.Ct., at 2576. Moreover, even if the Eleventh Amendment would otherwise present a barrier to an award of fees against a State, Congress was clearly acting within its power under § 5 of the Fourteenth Amendment in removing that barrier. Under § 5 Congress may pass any legislation that is appropriate to enforce the guarantees of the Fourteenth Amendment. A statute awarding attorney's fees to a person who prevails on a Fourteenth Amendment claim falls within the category of "appropriate" legislation. And clearly Congress was not limited to awarding fees only when a constitutional or civil rights claim is actually decided. We agree with the courts below that Congress was acting within its enforcement power in allowing

**13.** The petitioner argued that the fact that the recipient prevailed through a settlement rather that through litigation precluded her from claiming "prevailing party" status under 42 U.S.C. § 1988. The New Jersey Officials apparently recognize that issue to have been firmly rejected by the High Court in this case as it is not raised here. *See also Higgins v. Philadelphia Gas Works*, 54 B.R. 928, 933 (E.D.Pa.1985).

the award of fees in a case in which the plaintiff prevails on a wholly statutory, non-civil-rights claim pendent to a substantial constitutional claim or in one in which both a statutory and a substantial constitutional claim are settled favorably to the plaintiff without adjudication. As the Court of Appeals pointed out, such a fee award "furthers the Congressional goal of encouraging suits to vindicate constitutional rights without undermining the longstanding judicial policy of avoiding unnecessary decision of important constitutional issues." 594 F.2d, at 342. It is thus an appropriate means of enforcing substantive rights under the Fourteenth Amendment.

*Id.* at 131, 100 S.Ct. 2570. (emphasis added). This case would appear to leave open the availability of § 1988 here where § 1983 has been made applicable through a violation of the federal bankruptcy laws enacted by Congress pursuant to Article I and not the Fourteenth Amendment.

As discussed below, the Supreme Court in *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), held that § 1988 applies to all violations of § 1983, not merely ones that invoke § 1983 as a remedy for a constitutional violation or violation of a federal statute providing for the protection of civil or equal rights. Because, however, the violation addressed in *Maher v. Gagne, supra,* was a constitutional violation and Eleventh Amendment immunity was not at issue in *Maine v. Thiboutot,* there is no precise authority for the cause advanced by the Debtor notwithstanding her claim to the contrary. Yet given the alternative holding in *Hutto,* as reaffirmed by *Missouri v. Jenkins, supra,* that "the Eleventh Amendment does not apply" to an award of attorney's fees ancillary to a grant of prospective relief, I will assume that the New Jersey Officials may not shield themselves from liability by invoking the Eleventh Amendment and proceed to the question of whether 42 U.S.C. § 1983 has been properly invoked for violation of certain rights conferred by the Bankruptcy Code.

### B. *Attorney's Fees*

As noted above, *Hutto v. Finney* dealt with two separate fee requests. The first, a $20,000 fee award for bad faith conduct imposed by the district court, was viewed as remedial fine for contempt and a proper and necessary tool for enforcement of the court's injunction. The second, a $2,500 fee award for the costs of the circuit court appeal, was based on § 1988. Neither fee was precluded by Eleventh Amendment doctrine. However, only the second ground is applicable here as Plaintiff's sole basis for requesting attorney's fees is 42 U.S.C. § 1988 which authorizes such awards to a prevailing party on a § 1983 claim.[14]

The focus of the parties' dispute, and the briefs submitted in support of their respective positions, centers on the question of whether a claim under § 1983 is available for violation of rights conferred under the Bankruptcy Code, in this case §§ 524 and 525.[15] Plaintiff's § 1983 claim is framed as the Third Cause of Action of the Complaint. It states in pertinent part:

23. Defendants ... acting under color of state law,[16] NJSA 17:29A-35, *inter*

---

14. 42 U.S.C. § 1988 provides in pertinent part that "[i]n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, and 1986 of this title, ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fees as part of the costs."

15. The parties do not contest the availability of an action under § 525 where the defendant, as here, is a creditor and accordingly I do not address that issue herein.

16. New Jersey Officials also dispute that they acted "under color of state law" as that term is construed in § 1983. They reason that three federal courts had determined that the debts were dischargeable. I am afraid I do not understand the connection between their reasonable reliance on extant case law to support their actions and whether those actions were under color of state law. In *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Supreme Court articulated a two-prong test for deter-

*alia,* have deprived plaintiff of her rights under the United States Bankruptcy Code, and intend to deprive her of her rights and privileges under federal law, including but not limited to her rights under §§ 524, 525 and 727(b),[17] her right to a discharge in bankruptcy, her right to freedom from suits and collection activity, her right not to be discriminated against with regard to debts discharged in bankruptcy.

24. Therefore defendants ... violated 42 U.S.C. § 1983.

Complaint ¶¶ 23 and 24. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

In *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the United States Supreme Court considered whether § 1983 encompasses deprivation of rights secured by purely federal statutory law.[18] The Court rejected a limitation on the applicability of § 1983 to constitutional claims and found a § 1983 violation properly pled in the context of an asserted violation of rights granted under the Social Security Act. Moreover, it held that such statutory claims were covered by the Civil Rights Attorney's Act of 1976, 42 U.S.C. § 1988. In dissent, Justices Powell, Burger and Rehnquist criticized the "dramatic" expansion of liability of state and local

---

mining whether a party's actions were "under color of state law" for purposes of § 1983: (1) the deprivation must be caused by the exercise of some right or privilege created by the state, or by a rule of conduct imposed by the state, or by a person for whom the state is responsible; and (2) the person charged with the deprivation must be a person who may be fairly said to be a state actor because he is a state official, or because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state. *Id.* at 937, 102 S.Ct. 2744. The *Lugar* test requires the existence of a state policy and a state actor. *Almand v. Benton County,* 145 B.R. 608, 613 (Bankr. W.D.Ark.1992), *citing Roudybush v. Zabel,* 813 F.2d 173, 176 (8th Cir.1987). The New Jersey Officials are state actors whose conduct is clearly attributable to the state. Their actions were taken under the authority of New Jersey statute NJSA 17:29A–35, consistent with the state's policy to collect unpaid surcharges upon penalty of revocation of driver's license. That they may have believed that they were free to assert those state law claims notwithstanding the bankruptcy does not alter the essential nature of their action under color of state law. *Lonneker Farms, Inc. v. Klobucher,* 804 F.2d 1096 (9th Cir.1986), cited by the New Jersey Officials, does not compel a contrary conclusion. In that case, the acts complained of were those of the trustee and the bankruptcy judge, and the court easily concluded that they were taken under color of federal law.

It is also too late for the New Jersey Officials to complain that the § 1983 claim was not sufficiently pled since the Complaint has been settled. To be a prevailing party under § 1983 one need not establish that the claim would have prevailed. A consent order granting the Plaintiff relief is sufficient to sustain a § 1983 claim and trigger attorney's fees under § 1988. *See* note 13 *supra.*

17. The reference to § 727(b) is misplaced. That section merely states the effect of a bankruptcy discharge granted by § 727(a) and is not susceptible of an allegation of a violation of a federal right provided therein. Moreover the consent order has nothing to do with her § 727 discharge. Count One of the Complaint is for violation of the discharge injunction of § 524, and Count Two is based on an alleged violation of § 525. The cover sheet to the Complaint recites "violation of 11 U.S.C. § 524, 525; 42 11 U.S.C. § 1983" so perhaps the reference to § 727(b) was inadvertent.

18. The Supreme Court has been clear that mere violation of a federal law does not trigger a § 1983 claim. Rather there must be a right, privilege or immunity granted by such statute that has been violated. *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989).

officials resulting from the majority's transformation of purely statutory claims into civil rights actions under § 1983 and "virtual elimination" of the "American Rule" in suits against those officials. *Id.* at 12, 100 S.Ct. 2502. That the extreme result presaged by the dissent was not to follow became clear the next term when the Court clarified its ruling in *Thiboutot* by noting two exceptions to the application of § 1983 to statutory violations: (1) where Congress has foreclosed private enforcement in the statute itself (*i.e.*, the governing statute provides the exclusive remedy for violations of its terms) and (2) where the statute is not the kind that created enforceable rights under § 1983. These two exceptions were recognized in *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 19, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (finding that Congress foreclosed a § 1983 remedy under Federal Water Pollution Control Act as evidenced by the Act's comprehensive remedial scheme), and *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) (concluding that the Developmentally Disabled Assistance and Bill of Rights Act did not create any substantive rights to treatment in favor of

mentally retarded). It is this narrowed construction of *Thiboutot* that I must apply, not the broad reading urged by the Debtor.

In the wake of *Thiboutot* and prior to the limiting decisions in *Sea Clammers* and *Pennhurst*, bankruptcy courts easily found § 1983 violations in connection with claims under various provisions of the Bankruptcy Code. *See, e.g., In re Richardson*, 15 B.R. 925 (Bankr.E.D.Pa.1981); *In re Gibbs*, 12 B.R. 737 (Bankr.D.Conn. 1981), *aff'd*, 76 B.R. 257 (D.Conn.1983); [19] *In re Maya*, 8 B.R. 202 (Bankr.E.D.Pa. 1981). However, in *In re Begley*, 41 B.R. 402 (E.D.Pa.1984), *aff'd sub nom.* 760 F.2d 46 (3d Cir.1985),[20] the district court focused on the exceptions to the broad rule set forth in *Thiboutot* and concluded that one of them precluded the § 1983 cause of action brought for a violation of Code § 525.[21] The district court reasoned:

> After the decisions in *Richardson, Gibbs,* and *Maya,* the Supreme Court decided *Middlesex County Sewerage Authority v. National Sea Clammers Association,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). In that case the Supreme Court limited the application of *Thiboutot* to situations where the relevant federal statute did not have an

---

**19.** The district court on appeal did address the impact of *Sea Clammers* on the bankruptcy court's earlier ruling that § 1983 applied to a creditor's violation of § 362. It read *Sea Clammers* limitation of § 1983 relief to exist where the statute establishing the substantive right contained special procedural requirements such as advance notification of a federal agency or exhaustion of a state or federal remedy and concluded that the "Bankruptcy Act contains no such special provisions." *Id.* at 260. The district court's reasoning, in my view, misconstrues the intent of the *Sea Clammers* case that § 1983 claims yield to the statute creating the substantive rights when it provides its own remedial scheme. It could not be clearer to me that Congress has specifically legislated the remedy for a § 362 violation in § 362(h). Resort to §§ 1983 and 1988 would circumvent that express statutory scheme.

**20.** The applicability of § 1983 was not addressed in the appeal.

**21.** No court has questioned the applicability of *Thiboutot* based on the *Pennhurst* exception. In determining the scope of that exception, the Supreme Court has developed and repeatedly applied a three-prong test: (1) whether the statutory provision is intended to benefit the plaintiff; (2) if so, whether the provision reflects a "congressional preference" for certain conduct as opposed to a binding obligation; or (3) whether the plaintiff's interest is so "vague and amorphous" as to "be beyond the competence of the federal judiciary to enforce." *Suter v. Artist M.,* 503 U.S. 347, 365, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992) (*quoting Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989)). It seems fairly clear that § 525 is intended to benefit the debtor and that its proscription against discrimination is a binding obligation, neither vague nor amorphous. As such, § 525 creates a right enforceable by Debtor.

adequate and comprehensive internal enforcement mechanism. *Sea Clammers* involved a plaintiff who had forfeited its right to sue under the citizen suit provision of the Clean Water Act because it failed to give proper notice as required by that Act. *See* 33 U.S.C. § 1365. The Court held that the plaintiff could not bring its action under section 1983 because the Clean Water Act provided a sufficiently comprehensive enforcement scheme to warrant the inference that Congress did not intend section 1983 to apply. 453 U.S. at 19–21, 101 S.Ct. at 2625–2626. In *ALCOSAN* [*i.e., Allegheny County Sanitary Authority v. United States Environmental Protection Agency*, 732 F.2d 1167 (3d Cir.1984)] our Court of Appeals read the *Sea Clammers* holding broadly; the Court of Appeals held that no section 1983 claim could arise from a violation of the Clean Water Act, even when the citizen suit provision of that Act created no private right of action against the asserted violator. *ALCOSAN*, at 1174–1175.

The Bankruptcy Act provides a completely comprehensive enforcement scheme for violations of section 525. The parties do not dispute that a victim of prohibited discrimination under that section has a private right of action directly under that section and the jurisdictional grant of 28 U.S.C. § 1471. Application of section 1983 would simply duplicate the substantive claim. I therefore conclude that Congress did not intend to protect the rights declared by section 525 with a private claim under section 1983 in addition to the direct

right of action under the Bankruptcy Act.

41 B.R. at 408. Finding that the plaintiffs could not prevail on their § 1983 claim even if they were successful on their § 525 claim, Judge Pollock granted summary judgment to PUC on the former while reserving decision on the latter. In *Hendrickson v. Philadelphia Gas Works*, 672 F.Supp. 823, 834 (E.D.Pa.1987), the Court dismissed § 1983 claims brought in the district court for violation of § 366 of the Bankruptcy Code.[22] It found that:

> Rodriguez did not seek relief from the PGW restitution requirements through the bankruptcy court. PGW had the right to demand the restitution and the bankruptcy court had the right to modify the demand after notice and a hearing for all concerned. Rodriguez chose not to initiate relief in the bankruptcy court. Instead, Rodriguez chose to seek relief from this court under 42 U.S.C. § 1983. Rodriguez failed to exhaust the remedies provided to her by the Bankruptcy Act. For a federal district court to award damages for an alleged violation of the Bankruptcy Act where the bankruptcy court's jurisdiction has not been invoked would be improper.

*Id.* In so concluding, it observed, *citing Begley, Sea Clammers* and *ALCOSAN*, that the "Bankruptcy Act provides a full procedure and remedy for alleged violations of the Act." *Id.* at 834 n. 24.

The district court in *In re Watts*, 93 B.R. 350 (E.D.Pa.1988), affirming the bankruptcy court and relying on *Thiboutot* without reference to *Clam Diggers* or ALCON, concluded otherwise in connection with a § 1983 claim for violation of § 525.[23] While the Third Circuit Court of

---

**22.** Section 366(a) prohibits the refusal of service or other discrimination by a utility against a debtor solely on the basis of a bankruptcy filing or a dischargeable debt. Like § 525, violations are remedied by injunctive or declaratory relief but no attorney's fees are statutorily provided. *Begley, supra*, 41 B.R. at 407.

**23.** The Debtor also cites *Higgins v. Philadelphia Gas Works*, 54 B.R. 928 (E.D.Pa.1985), for the same proposition. Like the *Watts* Court, *Higgins* relies on the earlier *Maya* and *Gibbs* cases without reference to the limiting appellate decisions. Moreover, the *Higgins* Court expressly noted that the complaint, which was resolved through a settlement stipulation, had alleged a violation of the Due Process Clause of the Fourteenth Amendment

Appeals reversed both courts, *Watts v. Pennsylvania Housing Finance Co. (In re Watts)*, 876 F.2d 1090 (3d Cir.1989), its decision was based on other grounds.[24] It was able to deal with the § 1983 claim by stating that its dependency on a § 525 violation found non-existent defeated the § 1983 claim as well. *Id.* at 1096. Thus, the question of whether § 1983 derivative liability can be sustained for a violation of § 525 is unsettled in this district. *See In re Philadelphia Training Center*, 155 B.R. 109, 111 (E.D.Pa.1993) (recognizing existence of "some question whether § 1983 even creates a remedy for violation of 11 U.S.C. § 525").

Canvassing the decisional law of other jurisdictions, I find the cases similarly split. *Compare In re Coats*, 168 B.R. 159, 166 (Bankr.S.D.Tex.1993) (no § 1983 claim for violation of § 525)[25] and *Bell v. Sanford–Corbitt–Bruker, Inc.*, 1987 WL 60286, at *4 (S.D.Ga.1987) (follows *Begley* to deny attorney's fee request for violation of § 525) *with McKibben v. Titus County Appraisal District et al. (In re McKibben)*, 233 B.R. 378, 384 (Bankr.E.D.Tex.1999) (§ 1983 claim for violation of § 525).[26]

Notably of the two bankruptcy claims that are framed by the Complaint, I have focused only on § 525. While advancing the broad proposition that a violation of the Bankruptcy Code, a federal statute, by a state actor under color of state law, supports a cause of action under § 1983, Plaintiff does not cite any authority or even make any argument that a violation of the § 524 discharge injunction will give rise to a § 1983 cause of action. This is not surprising as § 524 is generally viewed as implying no private right of action. *See, e.g., Cox v. Zale Delaware, Inc.*, 242 B.R. 444, 447–48 (N.D.Ill.1999); *Bessette v. Avco Financial Services, Inc.*, 240 B.R. 147, 154 (D.R.I.1999); *Costa v. Welch (In re Costa)*, 172 B.R. 954, 964 (Bankr.E.D.Cal.1994).[27] Rather the remedy for a violation of the § 524 discharge injunction is contempt. *Id. See also Hardy v. United States*, 97 F.3d 1384, 1388 (11th Cir.1996); *Miller v. Mayer (In re Miller)*, 81 B.R. 669, 672 (Bankr.M.D.Fla.1988); *Behrens v. Woodhaven Association (In re Behrens)*, 87 B.R. 971, 975 (Bankr.N.D.Ill. 1988). Bankruptcy courts have properly awarded attorney's fees against a party that violates the permanent injunction upon a finding of contempt.[28] *Thomas v.*

---

in addition to claims under the Bankruptcy Code. *Id.* at 934.

24. It held there was no § 525 violation. Similarly my colleague Judge Fox did not have to decide whether a § 525 violation triggered a § 1983 claim in *In re Saunders*, 105 B.R. 781 (Bankr.E.D.Pa.1989), when he found no § 1983 action stated.

25. According to the *Coats* Court,
[a] review of §§ 362 and 525 reveals Congress' intent to establish a comprehensive enforcement mechanism for violations of the automatic stay and governmental discrimination against debtors, respectively. Therefore, on the surface it appears that Congress has enacted alternative remedies and it does not appear that additional derivative causes of actions exist in this case by virtue of § 1983.
*Id.* at 166.

26. The Court relied on this district's *Maya*, *Higgins* and *Watts* cases without reference to the contrary decisions. It rejected the defendants' claim that as § 1983 is a derivative

action, § 525 claims cannot serve as vehicle for § 1983 claims. It agreed that attorney's fees are not available to a prevailing party under the Bankruptcy Code but nonetheless noted their availability under § 1988. However, while the § 1983 claim was the only vehicle for securing attorneys' fees, they were denied because no evidence was presented upon which the court could make a fee award. In the instant case, Debtor's counsel has presented a detailed itemization of his services that ensures that a similar fate would not be his should I find a § 1983 claim to exist.

27. According to one Court, when Congress wanted to create a private right of action, it has expressly done so as evidenced by the provisions of 11 U.S.C. § 362(h) which establish a private right of actions for violation of the automatic stay. *Reyes v. FCC National Bank*, 238 B.R. 507, 510 (D.R.I.1999).

28. Debtor's Complaint did not raise contempt and not surprisingly this is not a basis for this Motion. It is not disputed that the New Jer-

*Resolution Trust Corp. (In re Thomas)*, 184 B.R. 237, 241 (Bankr.M.D.N.C.1995) (*citing* cases). Accordingly, a § 1983 claim cannot lie for a violation of § 524. Thus, the sole basis for a potential award of attorney's fees to Plaintiff is the successful statement of a § 1983 claim based on violation of rights conferred under § 525.

Since the Supreme Court decided *Maine v. Thiboutot* and carved out the exception to it in *Clammers*, it has had occasion to consider whether that exception applied to rights conferred under various federal statutes. Certain principles emerge from these cases. They were succinctly stated most recently by the Supreme Court in *Blessing v. Freestone*, 520 U.S. 329, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997), a case considering the availability of a § 1983 claim for violation of Title IV–D of the Social Security Act.

> Even if a plaintiff demonstrates that a federal statute creates an individual right, there is only a rebuttable presumption that the right is enforceable under § 1983. Because our inquiry focuses on congressional intent, dismissal is proper if Congress "specifically foreclosed a remedy under § 1983." *Smith v. Robinson*, 468 U.S. 992, 1005, n. 9, 104

S.Ct. 3457, 3464, n. 9, 82 L.Ed.2d 746 (1984). Congress may do so expressly, by forbidding recourse to § 1983 in the statute itself, or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983. *Livadas v. Bradshaw*, 512 U.S. 107, 133, 114 S.Ct. 2068, 2083, 129 L.Ed.2d 93 (1994).

*Id.* at 340, 117 S.Ct. 1353.[29] The Court has cautioned that Congress' intention to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right is not to be lightly concluded. *Golden State Transit, supra*, 493 U.S. at 106, 110 S.Ct. at 449.[30]

Applying these principles to this contested matter, it is clear that Congress has not expressly foreclosed reliance on § 1983 for a violation of § 525. Thus, my analysis must focus on whether Congress has created a comprehensive enforcement scheme in the Bankruptcy Code that is incompatible with individual enforcement under § 1983. Since a private right of action is available under § 525(a) for injunctive and declaratory relief, § 1983 is not inconsistent with any remedy granted thereunder. It is, however, duplicative. As noted above, it is not the duplicative remedies that prompted the § 1983 claim

---

sey Officials relied on extant case law that held that the surcharge debt was not discharged. Promptly after a contrary view was expressed, they agreed to the Consent Order. Their actions cannot be found to be the willful violation of a court order. However, whether the intentional nature of their actions would have been sufficient to sustain contempt and a concomitant sanctions award, including the recovery of attorney's fees, is not presented here.

**29.** The Court noted that only twice had it found a remedial scheme sufficiently comprehensive to supplant § 1983. In *Sea Clammers, supra*, it focused on the "unusually elaborate enforcement provisions" of the Federal Water Pollution Act, finding it "hard to believe that Congress intended to preserve the § 1983 right of action when it created so many specific statutory remedies, including the two citizen suit provisions." *Id.* at 347, 117 S.Ct. 1353. In *Smith, supra*, the Court

reasoned that "Congress could not have possibly wanted parents to skip these [carefully tailored local administrative procedures followed by judicial review] and go straight to court by way of § 1983 since that would have 'render[ed] superfluous most of the detailed procedural protections outlined in the statute.' " *Id. quoting Smith*, 468 U.S. at 1011, 104 S.Ct. 3457.

**30.** In *Golden Transit*, the Supreme Court found that there was no comprehensive enforcement scheme for preventing state interference with federally protected labor rights that would foreclose the § 1983 remedy. Referring to these same principles, the Third Circuit in *Farley v. Philadelphia Housing Authority*, 102 F.3d 697 (3d Cir.1996), found that a public housing tenant could maintain a § 1983 action to enforce her federal right to an enforceable grievance procedure as provided in the United States Housing Act, 42 U.S.C. § 1437 et seq.

but the additional remedy of attorney's fees that becomes available through § 1988 for the prevailing § 1983 plaintiff. Thus, the issue here is somewhat different than faced by the Supreme Court when it considered attempts by plaintiffs to utilize § 1983 to gain access to federal court to pursue federally granted rights for which they did not have a remedy under the statute granting the right. Query whether the judicial deference to a § 1983 claim because of its role in protecting against deprivation of federally granted rights should be less acute when the statute granting those rights provides the identical ability to safeguard them except for the ability to recover attorneys' fees under § 1988. Given "the purpose of § 1988, to ensure 'effective access to the judicial process' for persons with civil rights grievances," *Hensley v. Eckerhart*, 461 U.S. 424, 428, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), *quoting* H.Rep. No. 94–1558, p. 1. (1976), by providing another source for the recovery of attorney's fees, I think the answer must be no. Thus, the fact that the sole reason for the § 1983 claim is to secure attorney's fees is not dispositive of this matter. Rather the question is whether the statutory scheme of the Bankruptcy Code evidences a Congressional intention that fees not be available through this supplementary mechanism.

The Court in *Periera v. Chapman*, 92 B.R. 903 (C.D.Cal.1988), considered this question in the context of a violation of § 362, an admittedly easier case. However, its analytical framework is useful here as well. First, it recognized that when a statute provides specific and detailed procedures for administrative and judicial review, a § 1983 claim is more likely to be foreclosed. *Id.* at 907. Moreover, inconsistencies between the statutory remedies and the § 1983 remedies also may suggest Congress' intent that recourse to § 1983 is precluded. *Id.* Finally, "a governing statutory scheme that reflects a 'balance, completeness and structural integrity' suggests remedial exclusivi-

ty." *Id., quoting Dep't of Education, State of Hawaii v. Katherine D.*, 727 F.2d 809, 820 (9th Cir.1984), *cert. denied,* 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 260 (1985). Focusing on the latter point, the Court stated:

> In this case, there can be no doubt that the statutory scheme provided by the Bankruptcy Code reflects a "balance, completeness and structural integrity" that suggests remedial exclusivity. The Bankruptcy Code embodies an "unusually elaborate" system for resolving bankruptcy matters, complete with its own separate adjudicative framework.

92 B.R. at 908. *Accord Begley, supra,* 41 B.R. at 408. The Court also relied on the inconsistency of remedy between § 362(h) and § 1983, suggesting the exclusiveness of the § 362(h) remedy. It took special note of the absence of a right to a jury trial in a § 362(h) action. "If it were otherwise, a section 362(h) plaintiff's right to a jury trial would depend solely on his choice between two federal forums, each of which, as the discussion below demonstrates, has the authority to issue binding judgments on the matter." *Id.* Finally, it observed that § 362(h), being a core proceeding, provides a plaintiff with detailed judicial review at two levels: the bankruptcy court and the reviewing district court.

The *Periera* reasoning would apply equally to a derivative § 525 claim as the § 1983 action would likewise alter the available remedies in a core matter by opening the door to an Article III forum. While the Debtor here has advanced his claim in the bankruptcy court, a finding that § 1983 is available for a § 525 claim would allow the commencement of suit in the district court, a consequence certainly not contemplated by Congress when it carefully crafted bankruptcy jurisdiction in the wake of *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Indeed this was precisely what occurred in *Hendrickson, supra,* where a debtor elected to pursue in the district

court a § 1983 claim based on violation of § 366 and the court dismissed the action on the grounds that she had failed to exhaust her Code remedies. 672 F.Supp. at 833. The *Sea Clammers* exception is intended to prevent the use of a § 1983 action to circumvent the remedial scheme contemplated by Congress. Congress intended that the bankruptcy courts exercise jurisdiction over core proceedings and provided them with the power to enter final orders in such matters. 28 U.S.C. § 157. It is unlikely that Congress intended parties to bypass the bankruptcy court to secure relief in core matters by invoking § 1983 yet that would be the effective result if § 1983 actions were available to enforce rights granted under the Bankruptcy Code.

Moreover, it appears to me that Congress has signified its intentions with respect to the availability of attorney's fees for violations of Bankruptcy Code—created rights by enacting provisions allowing them in limited circumstances. Section 362(h) allows damages, including attorney's fees for *willful* violations of the automatic stay. Thus, a § 1983 claim making attorney's fees available for merely prevailing pursuant to § 1988, is inconsistent with § 362(h).[31] Section 525, on the other hand, is silent on the question of attorney's fees. It seems inconsistent with the legislative scheme that contemplates a finding of willfulness for the award of attorney's fees where they are expressly provided in the statute to conclude that a lesser standard will support the award of fees when they have not been statutorily granted.

As stated above, the Code provides no remedy for violations of the discharge injunction of § 524. However, since violation of that provision implicates a court order, damages, including attorney's fees, may be awarded through the court's exercise of its equitable powers in a contempt

context. A § 1983 claim for violation of § 525 making attorney's fees available for merely prevailing pursuant to § 1988, is inconsistent with the remedy available for violation of a court order embodied by § 524. Yet Congress has made clear that § 525 is intended to complement § 524. [Section 525] "codifies the result of *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971), which held that a state would frustrate the Congressional policy of a fresh start for a debtor if it were permitted to refuse to renew a driver's license because a tort judgment resulting from an automobile accident had been unpaid as a result of a discharge in bankruptcy." H.R.Rep. No. 595, 95th Cong., 1st Sess. 366–67 U.S.Code Cong. & Admin.News 1978 pp. 5963, 6321–6322 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 81 (1978) U.S.Code Cong. & Admin.News 1978 pp. 5787, 5876. The "effect of the section, and of further interpretations of the *Perez* rule, is to strengthen the reaffirmation policy found in section 524(b) [now (c)]. Discrimination based solely on nonpayment could encourage reaffirmations, contrary to the expressed policy." *Id.* The consequence of a violation of the detailed procedures for reaffirmation is the unenforceability of the reaffirmation, including the return of the funds paid under the void agreement. *Cox v. Zale Delaware Inc.,* 242 B.R. 444, 447–49 (N.D.Ill. 1999). Clearly resort to § 1983 and attendant attorney's fees from § 1988 would enlarge the debtor's rights contemplated by Congress to protect the debtor's fresh start.

In short, Congress has had the opportunity to and has tinkered with the remedial scheme of the Bankruptcy Code on numerous occasions since the promulgation of § 1983. It has addressed remedies section by section. It would be inconsistent with its approach to laying down a uniform law of bankruptcy that carefully balances the

---

**31.** Section 523(d) also provides attorney's fees but the prevailing debtor must establish that the creditor's position was not substantially justified to qualify. This bankruptcy

remedy also evidences Congress' intent that attorney's fees be awarded for something more than merely prevailing.

218

right of debtors and creditors to suggest that § 1983 could be utilized an overlay of that scheme.

Since I find no action under § 1983 lies for violation of the substantive rights upon which Debtor secured her consent judgment, I find she is not entitled to attorney's fees under § 1988. An Order consistent with the foregoing Opinion shall be entered.

### ORDER

**AND NOW,** this 13th day of March 2000, upon consideration of the Plaintiff's Motion for Attorney's Fees (the "Motion") incurred in connection with the above captioned otherwise settled adversary proceeding, a complaint averring violations of 11 U.S.C. §§ 524 and 525 and 42 U.S.C. § 1983 and after notice and hearing, and for the reasons set forth in the accompanying Opinion;

It is hereby **ORDERED** that the Motion is **DENIED.** The Clerk may close this adversary proceeding ten (10) days after entry of this Order.